## S. W. ALLEN AND OTHERS v. THE STATE.

1. Article 2034, Paschal's Digest, after specifying certain particular misdemeanors, provides in substance that any person who " shall do any other act or thing that would be deemed and held to be a nuisance at common law shall be guilty of a misdemeanor," etc. *Held*, that there is no necessary repugnance between this provision and article 1605, which declares that " no person shall be punished for any act or omission as a penal offense, unles the same is expressly defined," etc.

2. Under the clause of article 2034, above referred to, the proprietors of a tallow factory, who conduct that unwholesome and offensive business in

or near a town or densely settled neighborhood, or on a public thorough-
fare, are subject to be prosecuted and punished for a misdemeanor.

3. Four defendants were jointly indicted for misdemeanor in maintaining a
   nuisance. The proof on the trial showed that they were partners in the
   tallow factory which was the nuisance; and the jury returned as their
   verdict—" We the jury find the defendants guilty, and assess the pun-
   ishment at two hundred and fifty dollars fine." *He'd*, that this was evi-
   dently a joint verdict against the partnership; and being a joint verdict
   it was erroneous, as there can be no partnership in crime.

4. On the verdict as above, the court below rendered judgment against each
   of the four defendants for two hundred and fifty dollars. *Held*, that
   such a judgment was not warranted or supported by the verdict; the
   judgment being several, while the verdict was joint.

APPEAL from Galveston. Tried below before the Hon. Samuel
Dodge.

The tallow factory in question was " two or three miles west of
Galveston," according to the statement of facts; and was directly
on the line of the Galveston, Houston and Henderson Railroad.
Many witnesses were called on each side. Their olfactories did
not agree very well.

*Willie & Crosby*, for the appellants, filed a very able brief.
Its length precludes an entire insertion of it, and an attempt to
condense it would mutilate it.

*Wm. Alexander*, Attorney General, for the State.

OGDEN, J.—The indictment in this case is, in many respects,
uncertain and indefinite, and to some extent obnoxious to the ex-
ceptions filed by the defendants. Yet we think there are acts
charged against the defendants sufficient to constitute a misde-
meanor under the statute, according to the plain import and con-
struction of article 2034, Paschal's Digest, and the evident and
manifest intention of the Legislature that passed the act. That
article declares that if any person " shall do any act or thing that

would be deemed and held to be a nuisance at common law, he shall be guilty of a misdemeanor." This language is unequivocal and easy of definite ascertainment, and would seem to be as specific a description of one class of misdemeanors as could well be given in as few words. It is true that every act which would constitute a nuisance at common law is not described in the statute, nor is every act that constitutes theft, or an assault, or swindling, particularly described in the statute, and yet it is believed our statute is specific enough to include every act which would constitute either of those offenses. But the counsel for the defendants claim that the statute under which the indictment is drawn violates the principles laid down in article 1605, Paschal's Digest, and must therefore be declared null and void. It is hard to perceive the logic by which counsel arrive at this conclusion, as both articles were passed by the Legislature at one and the same time, and in one and the same act; and it is difficult to see how one section of the same act should have the force and effect to annul and destroy another. But we are of the opinion that there is no necessity for declaring either inoperative or null on account of its conflict with the other.

The article under which this indictment was drawn specifies certain acts which shall be deemed misdemeanors, and then adds in substance all other acts held to be nuisances under the common law; and we have therefore only to ascertain the meaning of the word nuisance at common law, to have a perfect description of this class of misdemeanors. Blackstone says, "that whatsoever unlawfully annoys or doth damage to another is a nuisance." If, therefore, the indictment in this case has specifically charged the defendants with unlawfully doing an act which annoys or damages others, then it is sufficient to hold them to answer the charge of a misdemeanor; and the facts must be left to a jury to determine the question of guilt or innocence.

The indictment charges the defendants with slaughtering

numerous cattle daily, and allowing their carcasses and offal to accumulate about their premises, thereby rendering the said business unwholesome and offensive to all the good citizens in the neighborhood.

It requires no aid of the common law to convince any one accustomed to pure air, and who has been brought by accident or necessity within the sickening and malarious influence of one of our modern tallow and beef factories, that it is a disgusting and nauseous nuisance, even for miles around it; and we are of the opinion that any person who, knowing the effect of that business, will erect a beef or tallow factory in the vicinity of a town or city, or in a thickly settled neighborhood, or on a public thoroughfare or highway, he or they so offending should be indicted and punished to the extent of the law.

The indictment in this case is not as specific and definite in setting out the acts constituting the offense charged as it should have been, yet we think it sufficient to charge an offense, and may be the foundation for a proper verdict and judgment.

But we think the judgment in this case must be set aside for the want of a proper verdict to sustain it. There were four persons jointly indicted, and jointly convicted, and the verdict of the jury is: " We, the jury, find the defendants guilty, and assess the punishment at two hundred and fifty dollars." It was proven on the trial that the defendants were partners, and jointly interested in the business for which they were indicted; and from the wording of the verdict of the jury, it is evident that they intended a joint verdict and fine against the partnership. If this was the intention of the jury, then their verdict is erroneous and must be set aside. (The State v. Gay, *et al*, 10 Mo., 441; Com. v. Cook, *et al.*, 6 Sergeant & Rawle, 584; and Bennett & Harris v. The State, 30 Texas, 521.) And if the jury intended to find a joint verdict against the firm, then the judgment, which is several, is unauthorized; and it is not perceived how the court below arrived

at the conclusion that the verdict of the jury was intended to be several. Had the jury found the defendants · guilty and specified the name of each, and then assessed the fine named against each, then there might have been no objection to the verdict in that respect. For, though several persons may be indicted for the same offense, yet there can be no partnership in crime, and when the jury not only pass upon the question of guilt, but also upon the question of fine, they must specify in their verdict the amount of fine assessed against each. (The State v. Gay, 10 Mo., 441; Fife v. Com. of Pa, 29 State R., 429; Curd & Ward v. Com. Ky., 14 B. Monroe, 386; Bennett & Harris v. The State, 30 Texas, 521.)

We are therefore of the opinion that the verdict of the jury was not sufficiently specific to support a judgment, and that the court erred in presuming the intent of the jury, and upon a joint verdict rendering a several judgment. The judgment is reversed and cause remanded.

Reversed and remanded.