Ocmulgee Building and Loan Association *vs*. Thomson.

OCMULGEE BUILDING AND LOAN ASSOCIATION, plaintiff in error, *vs*. METHVIN S. THOMSON, defendant in error.

1. By the charter and by-laws of a loan and building association, it was, in substance, provided that there should be two thousand shares; that no one stockholder should own more than thirty shares; that each share should pay $1 00 at each monthly meeting; that the moneys paid at each meeting should be sold to the highest bidder as an advance to such bidder upon his ultimate interest; that the company should wind up when each share, under the workings of the association, should be worth $200 00, or when each member had purchased an advance on his stock; that any member advanced.should give a note with a mortgage for the ultimate assumed value of his stock and assign his stock to the association as collateral security; that each stockholder who got an advance should pay $1 00 extra on each advanced share as *interest;* that for any default in the payment of dues, " as often as the same may be payable, he shall forfeit the additional sum of ten cents for every *such* failure, and for every dollar *thus* unpaid ;" that if any shareholder should be in default for three months, the association might proceed at law to collect the amount due from him. It was further provided, in substance, that the sum to be collected was such a sum as, at the rate of advances at the last monthly meeting, would, if put up for sale, have brought to the company the same interest the defaulter was paying, (in no case to be less than the net amount received by him,) together with all other payments, moneys and expenses due to the association by such stockholder:

*Held,* that under these rules and regulations, the association is entitled to a judgment for such an amount as will place it in the same situation as though there had been no default, and that when such judgment is paid, the defaulter is no longer such, but holds his stock as a nonadvanced member.

2. This amount for each share is to be ascertained by deducting from $200 00 (the ultimate assumed value,) such a per cent. of the same, as advances, were sold or allotted to members at the last regular monthly meeting next before the judgment, and adding to this the dues on such share for each default up to such meeting, and any fines that may be due for such default, provided the fines be not so grossly in excess of the real loss by the default as to be penalties and not a fair

measure of damages. The real damages to the association, caused by the failure of the defaulter to pay promptly his $2 00 per month on each share, is measured by the *interest* the association would have made on such $2 00, together with what it would have made by the sale of such $2 00 at the then rate, over and above what it could now make by its sale at twenty three per cent.

3. The law will not enforce the fines as such, because it is a settled rule that penalties agreed upon for a breach of contract are illegal. But, as in this case, the penalty of ten per cent. on the dollar for each default, if fairly construed, is assessable, under the by-laws, but once for each default, upon the regular dues for that month, and not ten per cent. upon the whole amount of the dues then unpaid, and as *such* a fine will be only slightly in excess of the real damages, we are of the opinion that the fine fixed by the by-law, so construed, is recoverable as stipulated damages.

4. In this case the defendant had purchased an advance on thirty shares. He was due to the association $49 00 on its books ; how, it does not appear. In October, 1872, he failed to pay his dues, and continued to fail. In November, 1873, the association agreed to wind up at $154 00, the then value of its stock, and has done no business since. At such last meeting the premium upon advances was twenty-three per cent., and the amount the plaintiff was entitled to recover was as follows:

| | |
|---|---:|
| $200 00, less twenty-three per cent. ... ... ... ... ... ... | $154 00 |
| Fourteen months' dues, at $2 00 each, ... ...· ... ... ... ... | 28 00 |
| Fourteen fines, (ten per cent. on $2 00,) ... ... ...· ... ... | 2 80 |
| In all for each share, ... ... ... ... ... ... ... ... | $184 80 |

For thirty shares, this will amount to—

| | |
|---|---:|
| Thirty times $184 80, or ... ... ... ... ... ... ... ... ... | $5,544 00 |
| To this add book account, ... ... ... ... ... ... ... ... | 49 00 |
| And fine for that, ... ... ... ... ... ... ... ... ... ... | 4 90 |
| The gross amount due, ... ... ... ... ... ... ... ... | $5,597 90 |

But as the association has quit business, the defendant is entitled to a credit of the agreed value of his stock, to-wit: thirty shares, at $154 00 per share, amounting to $4,620 00. So that the amount which the plaintiff is really entitled to recover is, taking off this credit, only $977 90, with legal interest from the date of the last regular meeting in November, 1873.

Building and loan associations. Fine. Penalty. Damages. Collateral security. Before Judge HILL. Bibb Superior Court. October Adjourned Term, 1873.

On September 17th, 1867, Thomson borrowed from the Ocmulgee Building and Loan Association, on thirty shares of

Ocmulgee Building and Loan Association *vs.* Tdomson.

stock, $6,000 00, at a premium of sixty-five and one-half per cent., upon which he received, in cash, $2,080 00. In November, 1873, it was agreed between the members of said association to wind up business at $154 00 per share, the then value of its stock. Fourteen months before this date Thomson ceased to meet his installments of dues and interest. He was also indebted to the association $49 00 on a previous default. He had, however, from the time of the loan until his default, paid to the association $3,695 00 as installments of dues and interest. Upon proceedings to foreclose the mortgage given by him to secure his indebtedness, it was claimed that he still owed $3,271 30 upon the following account:

Dr.

| | | |
|---|---|---|
| To amount of mortgage to October 1, 1872, ... | $6,000 00 | |
| To balance due on installments and interest, ... | 49 00 | |
| To fourteen months' installments and interest unpaid from October 1, 1872, to November, 1873, at $60 00, ... ... ... ... ... ... ... ... | 840 00 | |
| Three months' fine—$6 00, $12 00, $18 00, ... | 36 00 | |
| Seven months' interest on $889 00, at seven per cent, ... ... ... ... ... ... ... ... ... | 36 30 | —$6,961 30 |

Cr.

| | | |
|---|---|---|
| By thirty shares stock, seventy-seven months paid, at $30 00 per month, ... ... ... ... ... | $2,310 00 | |
| By twenty-three per cent. premium on $6,000 00 loan, ... ... ... ... ... ... ... ... ... | 1,380 00 | |
| Balance against Thompson, ... ... ... ... ... | 3,271 30 | —$6,961 30 |

In response, Thomson claimed that the account should stand thus:

Dr.

| | | |
|---|---|---|
| To amount of money, which will, at the rate of premium the funds were selling in November, 1873, (twenty-three per cent.,) produce the same monthly payment of interest as that which Thomson had been previously paying on his advance, ($30 00,) ... ... ... ... | $4,620 00 | |
| To balance due on installments and interest to October 1, 1872, ... ... ... ... ... ... ... | 49 00 | |
| To fourteen months' installments and interest from October, 1872, to November, 1873, ... ... | 840 00 | |
| To seven months' interest on $889 00, ... ... ... | 36 30 | —$5,545 30 |

CR.

By thirty shares of stock standing in Thomson's
    name on books of the association, and hypoth-
    ecated as collateral security for payment of in-
    stallments and interest at $154 00 per share. $4.620 00
By balance due by Thomson to the association, ...    925 30—$5,545 30

The questions of law and fact thus presented were submit-
ted to the court without the intervention of a jury. The
court held as follows:

"1st. I find and decide that the fines assessed by the asso-
ciation against the defendant, as in default, amounting to
$36 00, are legal and proper, and designed not wholly as a
penalty, but in part to put paying and non-paying stock on
an equality as to the benefits of the common fund of the as-
sociation, and are stipulated damages for such non-payment."

"2d. I further find that in the case before me, either as on
a foreclosure at law, or as on a bill in equity to foreclose be-
tween these parties, I cannot take into consideration the ques-
tion of applying the present value of defendant's stock to the
extinguishment of his indebtedness to the association, because
for such purpose all the stockholders would be necessary par-
ties, and are not so made parties in this case."

"3d. I further find and decide that the proper amount for
which the mortgage must be foreclosed must be found in ac-
cordance with the rule prescribed in section fourteen of the
charter of the association, and section twenty-two of the by-
laws. And I further find and decide that upon the sale of
the mortgaged property and the receipt of the money by the
association so found to be due, the defendant will then have
his thirty shares of stock free and unincumbered, and subject
only to future monthly installments to be assessed upon said
stock."

"4th. I find and decide that the amount the association is
allowed to retain, under said sections, in order that the same
shall, at twenty-three per cent., produce monthly the sum of
$30 00 interest, is the sum of $2,080 00 originally received
by defendant, because the sum that will produce that is less

than the sum so loaned; the sum of $1,565 21⅔ will produce that sum at that per cent. interest, and $2,032 74 will do so by discount, which latter I decide to be the true mode, and both are less than the net amount actually received by defendant, to-wit: $2,080 00.   Add to this $2,080 00 back dues of interest, $889 00, and three fines, amounting to $36 00, and average interest on back dues at seven per cent. to date of suspension of company, $36 30, and we have $3,041 30 as the true amount for which the plaintiff must have judgment; and I find and decide and adjudge said sum of $3,041 30 to be the true amount for which said mortgage shall be foreclosed, leaving the defendant his thirty shares of stock to be reassigned to him by the company when this sum shall be paid."

"5th. Counsel for the association have insisted that I should allow the plaintiff to retain, also, fines for each month of default by defendant, but admits that such fines have never been assessed by the company, upon its books, or charged against the defendant.   This I refuse, and decide and adjudge that said company have waived the same, and have no right hereafter to assess the same, or to charge them up as a debt against the defendant, and that on payment of this judgment, defendant's stock will stand unincumbered as to all fines that might have been, but were not, charged against him."

The provisions of the charter and by-laws are sufficiently set out in the above head-note, without repetition here.

To each and every part of the above judgment the plaintiff excepted.

LANIER & ANDERSON, for plaintiff in error.

NISBET, BACON & HINES, for defendant.

McCAY, Judge.

1. The principal question in this case is, what is the amount the plaintiff is entitled to recover, and what is the *status* of the defendant in the association, *according to its charter and*

*by-laws, when the judgment is satisfied.* We have little to say that is not contained in the masterly argument of Mr. Bacon, the counsel for the defendant. It is said that this question is decided by the case of the *Bibb County Loan Association vs. Richards,* 24 *Georgia,* 198. But though the association then set up the same claim they do here, the only question decided was the right to recover, and that the recovery was regulated by a section in the charter, like the fourteenth of this. The amount of the recovery and the *status* of the defendant, as to his shares, was not considered by the court; that, however, is the very question in this case, and it depends entirely on a construction of the by-laws and charter. There is absolutely no provision of the charter to justify the rule of adjustment adopted by the company—it is entirely arbitrary. The provisions of sections five and six apply strictly, and in terms, to stockholders who have not received any advance, and who fail to pay. The case of the defendant here, when he pays the judgment, is that of one who has got an advance, paid it back, with all its incidents, and all his arrears. These associations are founded on mathematical calculations, and a close scrutiny of their charters will show that their rules are based upon the highest principles of equity and fairness. Their fundamental idea is that one who has the privilege of paying money advanced to him in small sums, monthly, can, in consequence of the slight strain the payment makes on his resources each month, pay a large per cent. for the use of that money, and the whole scheme, adopting this as its fundamental idea, is based upon fairness and equity to all parties. The charters have, most of them, come here through the northern states from England and Germany, and they have been perfected by experience, so that there is scarcely a word in them that is superfluous or without a definite meaning. The measure of the amount due by one who has got an advance, as fixed by section fourteen, is exactly the sum he would have paid the company had he promptly complied with his engagements and paid back the money he got, together with a measure—the fines—of what the company would have made according to its ordinary work-

ings, on his dues, had he paid them promptly, and when he pays this the company is whole. It is precisely in the situation of one who has discharged his property from the mortgage under section twenty-four of the by-laws. When he took the money he undertook to do the very thing the judgment makes him do, and he pledged to the association his stock as collateral security for the faithful performance of his undertaking, and when he performs it by payment, as prescribed by section fourteen of the charter, this stock is released from the pledge, and he holds it as though he had never got an advance—which, in fact, he has not, for he will have returned it. There is nothing in any portion of the charter or by-laws which declares he is no longer a member. He is exactly in the situation of one who has discharged his property from the mortgage by section twenty-four of the by-laws. He pays back the money he got, with such an advance upon it as will enable the company, at the lower rates at which money is selling, to get the same monthly interest upon it as the defendant ought to pay at the rates he got it at. He pays up all arrears and dues, and he pays up all fines due the company for his failure—why should he not now be the owner of his stock? Why should he not stand exactly like a man who has got no advance. The company is, as to him, precisely in the situation it is to a man who has got no advance. Why should he not stand in the same way as to the company? It is the harsh, unjust, outrageous and oppressive demand which the companies, as they have worked here, make on one who has failed to pay, which has cast on these companies the odium in which so many persons hold them. We think in this oppression they are violating their own rules, and that it has thus far been borne with because the subject has been misunderstood. As to the amount the defaulter is due, except as to the fines, that, we think, is very plain. The point sought is, what will make the company whole; what will put it precisely in the situation it would have been in had the defaulter never got any money, or promptly paid his dues, as he agreed to do. Obviously such

Ocmulgee Building and Loan Association *vs.* Thomson.

a sum as, at present rates, will produce to the company the same dues as he pays, or rather, the same number of dollars on each share.  Money has fallen since he sold his interest or borrowed—the time of winding up has got nearer, and it will take more money to be sold to pay $20 00 at $1 00 per share than it did when he got his advance.  This he must make up.

.2, 3. Next he must pay all back dues.  But it is obvious that these dues would have been making money, since, as they were paid, they would have been sold.  It would be possible to ascertain accurately what this ought to be by seeing what money sold for each month, but the calculation would be intricate, and as it is intended and expected that these societies will be managed often by men who do not understand their principles, and who are unable to make calculations, this profit is ordinarily met by what is called a fine.  By the words of the by-laws, it is perhaps the fairest meaning to be put upon them, that the fine shall be but once laid, and laid each month, not on the whole amount then due, but on the amount due for that month.  On making a calculation it will be found that this is about what would be the average profits on the dues paid, and we think that not unfair.  To take the view taken of it by the counsel for the plaintiff in error, would be to make these fines, not liquidated damages, but penalties, and not enforceable by law.

4. As it is said this company has quit business and is winding up, we think, if its assets are ascertainable, the defendant would be entitled to a credit for the value of his stock.  If that be not so, he ought, if the company still goes on, to pay the whole sum, holding his stock as the other non-advanced members do.  We leave this an open question, according to the facts.  We are compelled to reverse the judgment, because, whilst we agree with the judge as to the principles on which the matter is to be adjusted, we think he clearly erred in applying section fourteen to the case in hand.

Judgment reversed.