## GEORGIA STATE BUILDING & LOAN ASSOCIATION v. AMERICAN INVESTMENT & LOAN COMPANY.

1. Where a member of a building and loan association received a sum of money as an advance on his shares of stock, and entered into an obligation undertaking to pay monthly a certain sum as dues on the stock advanced upon, and a further monthly installment of interest and premium on the advance, the contract also stipulating for the continuance of such monthly payments as long as the association should continue to exist, or as provided in the by-laws; and where, in addition to a deed to land which the member had executed as security for his performance of these undertakings, he also furnished the association the bond of a third person, in a penal sum, conditioned "that such member should promptly pay the installments of stock, interest, and premium, first falling due under his obligation, to the amount of four hundred dollars," such obligation was a special guaranty, and was broken pro tanto, whenever the member failed to pay any installment included in the sum of four hundred dollars as an aggregate of the monthly installments first maturing under the contract.

2. Under such a guaranty it was the right of the association to recover from the guarantor the amount of each installment within the limit as default was made; or, at its option, it could have judgment to the amount of four hundred dollars, whenever the successive monthly installments first maturing aggregated that sum, and remained unpaid.

3. When, however, in the trial of an action on such bond, it appeared that the member made payment of installments in an amount less than four hundred dollars and then defaulted in subsequent successive payments, and the association, without proceeding against the guarantor for the amount of such defaulted payments, recovered a judgment against the member for the whole amount due under his contract, which was more than four hundred dollars, and by a sale of the land it held as security realized four hundred dollars, which was applied as a credit on the execution issued on that judgment, the guarantor could not be held liable for any sum after the monthly payments made and the sum realized from the sale of the land aggregated the amount guaranteed. The surety on the bond did not undertake generally and absolutely to guaranty the payment of any and every sum of four hundred dollars for which his principal might become liable to the association, but the payment of a particular demand for four hundred dollars, payable in a stated way, to the satisfaction of which the proceeds arising from the sale of the land held as security were as well applicable as to the satisfaction of subsequent installments not guaranteed, and when payment was thus realized the guarantor was discharged.

Argued February 20, — Decided July 8, 1897.

Complaint on bonds. Before Judge Ross. City court of Macon. March term, 1896.

*Dasher, Park & Gerdine,* for plaintiff.
*Anderson, Anderson & Grace,* for defendant.

LITTLE, J. The Georgia State Building & Loan Association filed its petition against the American Investment & Loan Company, alleging that the defendant was indebted to the plaintiff in the sum of $471.00 on two guaranty bonds; that on the first of said bonds the defendant guaranteed to the plaintiff the payment of $400.00 in installments of stock and interest and premium due and payable by W. B. Carlton, and that Carlton only paid the sum of $172.60 under his contract, leaving due to the plaintiff by the defendant, under the condition of its guaranty bond, the sum of $227.40; that by the second bond the defendant guaranteed to the plaintiff the payment of $410.00 in installments of stock and of principal, interest and premium, under the contract of Callie L. Walker theretofore made with plaintiff, and that Callie L. Walker has only paid the sum of $146.40, leaving a balance of $263.60 due to the plaintiff by the defendant on the second of said guaranty bonds. To this petition the defendant filed an answer, in effect admitting the execution of the bonds, but denying indebtedness thereunder.

The bonds sued on were the separate obligations of the American Investment & Loan Company, in the usual form of penal bonds, executed April, 1893. The conditions of each are practically similar. After certain recitals, each bond contains the following clause: "Now then, should the said principal promptly pay to the said obligee the installments of stock, interest and premium first falling due under the contract between said principal and said obligee, as and when the same shall become due and payable, until the amount so paid shall aggregate the sum of $400.00 (in the second bond $410.00), then this obligation to be void." These guaranty bonds purport in the body of each to be, respectively, executed by W. B. Carlton and by Callie L. Walker as principal, while the American Investment & Loan Company is described in each bond as surety. In fact, as they appear in the record, they are not signed by Carlton nor by Walker. The condition in the bond referring to Walker, in addition to the payment of install-

ments of stock, interest and premium first falling due, etc., includes also payment of the principal. With this difference as well as the difference in the amount guaranteed, the conditions of the two bonds are the same. The case was tried upon an agreed statement of the facts, which set out the bonds referred to in full, and a meagre description of the other contracts, but with no reference whatever to the charter and by-laws of the association. The record refers to the borrowers' bonds given to the association, which it describes as being in the form of penal obligations, which provided for the payment by the borrower to the association of a certain monthly installment as dues on the stock advanced on, and a further monthly installment as interest and premium on such advance. In the Carlton case the aggregate monthly installment was $18.70; in the Walker case the monthly installment was $19.20; and these amounts it was provided in such respective obligations should be paid as long as the association continued to exist, or as might be provided by the by-laws, rules and regulations of the association. These respective borrowers' obligations were secured by certain deeds, one given by Carlton and the other given by Walker, conveying to the association absolute title to certain described real estate; in each of said deeds it is recited that it was given to secure to the association "payment of said advance, or of such sum of money as under its charter and by-laws it would be entitled to recover by suit on said bonds, as well as all cost of collection and ten per cent. thereon as attorney's fees incurred by said association in enforcing its rights as vendee hereunder as aforesaid, just as if the same were mentioned in said bond." In each of said security deeds the right and power to sell the real estate therein described, under the terms of § 1970 et seq. of the Code of 1882, was given, on failure of the maker of said deed "to pay the installments, interest and premium mentioned in said bond for the period of three successive months." The record further discloses that each of said borrowers made default in the payment of monthly installments, and this default having continued for a period of three successive months, the association brought suit to the September term, 1894, of the city court of Macon,

against the said Carlton and Walker respectively, and recovered judgments against them as follows: against Carlton for $1,275.60, $27.80 interest; against Walker for $1,322.72, and $30.00 interest, together with all costs in each case; that reconveyances of the property respectively described in the bonds for title were made by the association to said parties separately, and were filed with the clerk of the superior court of Bibb county and recorded, and that the executions issued on the judgments respectively rendered were levied on the realty described in said security deeds; that sales of the property were made by the sheriff, and that each parcel of real estate was bought by the association for the sum of $410.00, and that these sums were credited, respectively, on each of the executions.   The association then brought this suit against the guarantor for $471.00, being the amount guaranteed by the two bonds, less the amounts paid in by Carlton and Walker, respectively, as monthly installments.   The defendant denied any indebtedness on said bonds, and claimed that the proceeds of the sale of real estate realized under the executions obtained against Carlton and Walker should be applied to the payment of the installments of stock, interest and premium due by each as they first became due, and that when so credited the plaintiff would not be entitled to recover anything on said guaranty bonds, because the condition of such bonds would then have been fully observed.

The case, under the statement of facts above set out, was submitted to the judge below without a jury.   His finding was in favor of the defendant.   The plaintiff moved for a new trial, on the general grounds alone.   The motion was overruled, and it excepted.   We are therefore to consider whether the judgment for the defendant rendered by the judge is contrary to law and the evidence in the case.

1. The controlling question submitted in this record is, whether or not the amount realized by the association from the sale of the property of the borrowers must be applied as a credit towards payment of the installments of stock, interest and premiums first falling due under the borrower's contracts, or whether such sum shall be credited generally on the judg-

ments obtained against the borrowers by the association, in consequence of the default provided for in the borrowers' obligations. These obligations bound the makers to pay to the association a certain monthly installment as dues on the stock advanced upon, and further monthly installments as interest and premium on such advance; and the makers undertook to continue the payment of such monthly installments so long as said association should continue to exist, or as might be provided by the by-laws, rules and regulations of the association. The meaning of these contracts between the borrowers and the association is, that the borrowers were shareholders in the association, and procured from it an advance on the stock held by them; and that during each month that the association should continue to exist, these borrowers would pay toward the maturity of said shares of stock a given monthly installment, and in addition thereto should pay the monthly interest and premium on the sum so advanced, calculated according to the plan of the association. It was further contemplated that the amount of money advanced on these shares of stock would not be paid in any other way (except in the contingency hereafter referred to) than when, by such monthly payments and the profits to which such shares of stock would be entitled from the business of the association, the shares should mature, that is, arrive at their par value; then the shares of stock would be exchanged for the borrowers' mortgages or deeds; such mortgages or deeds would then be canceled and further payments cease. Endlich on Building & Loan Associations, §129, notes 3 and 4, and authorities cited. The fundamental idea of building associations is, that one who has the privilege of paying money advanced to him in small sums monthly can, in consequence of the slight strain the payment makes on his resources each month, pay a larger per cent. than usual for the use of the money; and the whole scheme, adopting this as its fundamental idea, is based upon fairness and equity to all parties. *Ocmulgee Building & Loan Association* v. *Thomson,* 52 *Ga.* 427. In the case of *McGowan* v. *Savannah Mutual Loan Association,* 80 *Ga.* 517, in discussing the value of stock for the purpose of taxation, Chief Justice Bleckley says: "When stock

is advanced upon to its full value, instead of being worth anything as stock or having any market value, it is worse than nothing; for the holder, though he can never derive anything from it, is subject to future assessments." It is true that the question as to the relation between payments made by a borrower upon his stock, and the debt he owes the society, has been decided differently in the different States. Reference to these decisions is made in Endlich on Building & Loan Associations, § 477. It may be accepted, nevertheless, that so far as this State is concerned, in the absence of express provisions to the contrary, the plan of the repayment of the advance made on stock is as above set forth; and we hold, in construing the contract made between the borrowers and the association in this case, that it was not contemplated by the parties that the principal sum advanced should be paid in any other manner than by the monthly payments provided in the obligations of the borrowers.

2. The obligation of the defendant is one of special guaranty, and was broken when the principals failed to pay when due any installment of stock, interest or premium; and there is no question but that the association had a right of action against the guarantor for each default of the borrowers at the time the default was made. Each monthly installment constituted a separate debt. 12 W. N. Pa. 222. It would follow that the association could have recovered from the guarantor for each successive installment singly, or, waiting until the amount of such default had reached the limit guaranteed, it could then have proceeded for the aggregate sum within the limit of the guaranty. This we consider to be the nature of the obligation which the guarantor in this case assumed.

3. The association, to secure the obligations of the borrowers, accepted, as security, title to certain real estate therein described. The conveyances by which title to such real estate passed to the association were made under § 1969 et seq. of the Code of 1882. In these conveyances it was prescribed that the association should have the right and power to sell said real estate, on failure of said borrowers to pay the installments of stock, interest and premium mentioned in their respective

bonds, for a period of three successive months, to secure to the association the payment of said advance, or of such sum of money as, under its charter and by-laws, it would be entitled to recover by suits on the bonds. Under this provision, when the borrowers were in default, the association had the right to sell the property and apply the proceeds to the amount due by the borrowers. In other words, a default in the payments mentioned, for three months, had the effect to give to the association the right to collect, either by a sale of the property under the power given in the deeds, or by suit and judgment on the bonds, the amount found to be due by the borrowers to the association, together with costs, etc. In ascertaining the amount due by a borrower, it will be remembered that the whole undertaking calls for the payment of a series of items, and the borrower having made payment of a number of them, he is to be allowed credit for that number and a judgment would follow for the remainder. 10 Md. 397; Endlich on Building & Loan Associations, § 122. The arrearages would consist of dues, fines, and such a sum of money in gross as to liquidate the installments payable in the future. Endlich on Building & Loan Associations, § 447; 40 Md. 237. It will thus be seen that the sum advanced by the association is not to be taken as the amount for which such judgment would be rendered, but the measure of the amount due is the sum he would have paid the company, had he complied with his contract. 52 *Ga.* 427.

The borrowers were in default; and while the association had the right to collect from the guarantor each installment of stock, interest and premium as the same became due, it elected to proceed under the breach of the contract and to recover against the borrowers a judgment for the gross amount due; and it now contends that the obligation of the guarantor is to make good the difference between the amounts paid by the borrowers as installments of stock, interest and premium, and the amounts to which the guaranty was limited in each case, notwithstanding that, under its election to proceed against the borrowers for the default, it realized from the sale of the property an amount which, when added to the installments paid

by the borrowers, exceeds the guaranteed limit in each case. There are two reasons why, in our judgment, the plaintiff is not entitled to have such recovery against the guarantor. First, as the whole debt due by the borrowers consists of the monthly installments, and the aggregate amount is made up from the successive installments, when any sum is paid by the borrowers, or is realized from the securities in the hands of the association, the same should be appropriated to the payment of the monthly installments first falling due; and the fact that these monthly installments have been reduced to judgment for a gross amount would not entitle the association to simply treat the amount collected as a general credit on such judgment, but, following the plan and scheme of the association, it would, so far as the guarantor is concerned, be held to apply to the payment of successive installments first falling due. Second, the contract of the guarantor was to make good the payment of the installments first falling due up to a given amount. The plan and scheme of this contract was, that installments was the method agreed on to pay the debt. It was within the power of the association, before the sale of the real estate pledged to it by the borrowers, to collect from the guarantor such of the monthly installments within the limit of the guaranty as were not paid. When, however, it elected to abandon this system of payment by monthly installments, and included in the judgment obtained the amount for which the guarantor was liable, and collected from the sale of property under this judgment an amount sufficient to pay the liability of the guarantor, the amount so realized must be held to extinguish the obligation of the latter. *Judgment affirmed. All the Justices concurring.*