This cause involves a controversy over the settlement of the estate and the probating of the will of an Osage allottee who died testate in Osage county.
The facts, briefly stated, are as follows:
Wah-shah-she-me-tsa-he, a member of the Osage Tribe of Indians, died on August 20, 1919. Her first husband was Anthony Penn, who died a number of years ago. Of this marriage three children, Eddie Penn, Walker Penn, and Angie Bonnicastle, survived. Later she married one Laban Miles, and of this marriage one child, Amos Miles, was born, who is now living. In 1908 she obtained a divorce from her second husband, and in 1914, several years subsequent to the Allotment Act of Congress (Osage Allotment Act June 28, 1906), she married one Tom Steele, the defendant in error in this court. of this marriage no children were born.
At the time of her death the following heirs at law survived: Tom Steele, surviving husband and defendant in error; Eddie Penn, a son; Walker Penn, a son; Angie Bonnicastle, a daughter; and Amos Miles, a son.
All of her estate was acquired prior to her marriage to the defendant in error.
Deceased left a will which was duly approved by the Secretary of the Interior as provided by section 8 of the Act of Congress approved April 18, 1912. By the terms of this will she gave each surviving heir a one-fifth interest in her Osage tribal rights.
The said will was admitted to probate in the county court of Osage county, and H. H. Brenner, the executor, proceeded to administer on said estate and in due time filed his final report and a petition for the distribution of said estate as provided by the terms and provisions of said will.
Prior to the hearing on the final account of the executor and his application for final distribution the surviving husband, defendant in error, filed his motion asking the county court to reduce the devise of each surviving child in a proportionate amount so as to increase his own devise from a one-fifth interest given to him by the will to a one-third interest.
Upon a hearing being had the county court denied the motion of Tom Steele, defendant in error, and made and entered an order of final distribution of said estate according to the provisions and terms of said will from which judgment the defendant in error appealed to the district court of Osage county.
Upon a hearing being had in the district court a judgment was rendered overruling *Page 178 
the judgment of the county court and reducing the interests of the other devisees or beneficiaries under the will so as to make their interests amount to a two-thirds interest in said estate and increase the interest of Tom Steele, defendant in error, the surviving spouse, by making his interest in said estate amount to a one-third interest therein; and ordering distribution accordingly.
From the judgment of the district court sustaining defendant in error's motion, and an order overruling the motion for a new trial, the plaintiff in error appealed to this court.
A motion to dismiss this appeal was filed in this court by the defendant in error on March 21, 1923. This motion was fully briefed and presented and this court, upon consideration thereof, made and entered an order on April 24, 1923, denying the motion to dismiss.
It is urged, however, that a rule should be announced defining what are and what are not joint judgments, and also a definite rule establishing the rights or lack of rights of nonappealing parties.
This motion was upon the grounds: First, that the executor of said estate and three devisees named in the said will are necessary parties herein and are not before this court; second, the case-made herein was not served on any of the parties to this controversy except this defendant in error.
It is further urged "that if this court, after full consideration of the motion to dismiss, holds that said case should not be dismissed and so holding decides that the judgment herein is not a joint judgment, then and in that event the court must not overlook the controlling authorities to the effect that 'a reversal is binding on the parties to the suit, but does not inure to the benefit of the parties against whom judgment was rendered in the lower court and who did not join in the appeal,'" citing 4 C. J. 1206.
We are clearly of the opinion that the judgment of the district court was a several, and not a joint, judgment. No authorities have been cited by defendant in error that hold that such a judgment as in the instant case is a joint judgment.
Furthermore, an appeal is perfected by complying with section 782, Comp. St. 1921, which provides for notice in open court and:
"Upon the giving of such notice and entering same on the trial docket all parties of record in the court from which such appeal is to be taken shall become parties to the appeal in the Supreme Court and no further notice shall be required to be served upon them of such appeal, but such notice above provided and showing intention to appeal shall automatically make all parties of record in the lower court parties in the appellate court."
The statute providing for the service of case-made, section 785, Comp. St. 1921, enacted in 1917, provides, among other things:
"The case so made or a copy thereof shall, within 15 days after the judgment or order is rendered, be served upon the opposite party or his attorney. * * *"
It is urged that the case-made herein was not served on any parties to this controversy except the defendant in error, Tom Steele.
The question arises, Who is "the opposite party ?"
In Morrison v. Leach (W. Va.) 47 S.E. 237, it is held that a statute requiring notice to the opposite party means all parties who have an interest in upholding the decree sought to be reversed. The word "opposite" is a synonym of "adverse". Pranty v. Consol, Fuel Co., 82 Kan. 541, 108 P. 802.
In McDonald v. Denton (Tex.) 132 S.W. 823, it is said:
"Where there was no adverse interest between defendants in the trial court any one of them could appeal without making the other defendants parties."
We think all parties in the lower court were made parties in the Supreme Court by the notice of appeal given in open court and full jurisdiction was obtained over said parties. The persons entitled to service of case-made were served. It is not contended by either party to this appeal that the other devisees are adverse to the plaintiff in error.
It appears that all parties in interest appeared and were parties in the district court; that all parties in interest further appeared and were parties on the hearing for a motion for a new trial; and that all were present in court and had notice of appeal provided for by the amendment of 1917, and the case-made was, as before stated, served on all adverse parties, as shown by the record.
The motion to dismiss this appeal will not be further considered and the cause will be considered on its merits.
There is no dispute as to the facts which were found in the findings of the county court and of the district court.
The one question in the case, as we view it, is: What portion of the estate of Wah-Shah-she-me-tsa-he, *Page 179 
deceased, has the surviving spouse, the defendant in error, acquired?
Section 11301, Comp. St. 1921, provides, among other things, "that if the decedent shall have been married more than once, the spouse at the time of the death shall inherit property not acquired during coverture with such spouse only an equal part with each of the living children of the decedent and the lawful issue of any deceased child by right of representation."
Section 11224, Comp. St. 1921, provides in part:
"No man, while married, shall bequeath more than two-thirds of his property away from his wife, nor shall any woman, while married, bequeath more than two-thirds of her property away from her husband."
Section 8 of the Act of Congress of April 18, 1912, provides:
"That any adult member of the Osage Tribe of Indians not mentally incompetent may dispose of any or all of his estate, real, personal, or mixed, including trust funds, from which restrictions as to alienation have not been removed, by will, in accordance with the laws of the state of Oklahoma; provided that no such will shall be admitted to probate or have any validity unless approved before or after the death of the testator by the Secretary of the Interior."
The theory of the defendant in error, as we understand it, is that the act of Congress, supra, which authorized the testatrix to make the will in question, specifically provides that the property of an adult member of the Osage Tribe of Indians may be disposed of by will in accordance with the laws of the state of Oklahoma; that therefore if, under the laws of Oklahoma, the testatrix bequeathed and devised away from her husband, defendant in error, a greater portion of her estate than the laws of Oklahoma authorized, such devise as to said husband is invalid.
It will be observed, however, that the act of Congress referred to not only provides that the estate of a member of the Osage Tribe of Indians may be disposed of by will in accordance with the laws of Oklahoma, but further provides that no will shall be admitted to probate or have any validity unless approved before or after the death of the testator by the Secretary of the Interior.
In the instant case the will, which divided the testatrix's property equally among the heirs, was reformed by order of the district court reducing the devise of each surviving child in proportionate amounts so as to increase the devise of the surviving husband to a one-third interest. The will thus reformed by the judgment of the district court was not approved by the Secretary of the Interior.
It must, we think, be conceded that it is not incumbent upon the Secretary of the Interior to approve the will of an Osage Indian although the will was in strict accordance with the laws of the state. In other words, before a will of such Indian can be held to be valid, it must be approved by the Secretary of the Interior.
Furthermore, the will which was approved by the Secretary, giving to the heirs an equal share of the testatrix's property, was in accordance with the laws of the state as provided in section 11301, supra.
The presumption is that the Secretary of the Interior was acquainted with the fact that none of the property of the testatrix came to her during her marriage to her surviving husband; that she left surviving her the husband and four children, the offspring of former marriages; and that none of the property mentioned in the will was acquired during coverture with her surviving husband; and when the testatrix's will left her property thus acquired to her heirs equally such disposition of her property was in accordance with the Oklahoma statute of descent and distribution.
It will be observed that the surviving husband was devised an interest under the will which was approved by the Secretary the same as he would have taken in the case of intestacy.
The testatrix, in this case, did not bequeath away from her husband any portion of her property that would have gone to him by inheritance under the statute. He was given the equivalent under the will that he would have taken under the statute.
Before it can be said that property has been bequeathed or devised away from a husband or wife it must be first determined that such property would have been inherited by such husband or wife but for the provisions of the will.
That is to say, there can be no bequeathing away from the surviving husband in this case that which he could not acquire by inheritance.
If the decedent had died intestate her estate would have descended under the provisions of section 11301, supra, and the defendant in error would have inherited "only an equal part with the living children", or, in this case, a one-fifth interest, which was the exact interest given to him by the will. *Page 180 
The will, as reformed by order of the district court, was not only contrary to the intent of the testatrix, but contrary to the intent of the Secretary of the Interor, and the reformed will, therefore, cannot be said to be the will of the testatrix.
It is difficult to see how the beneficiary, the defendant in error, can be said to take under the will, and at the same time repudiate the will as drawn by the testatrix and approved by the Secretary of the Interior.
If the will is void for any reason the husband would take under the provisions of section 11301, Comp. St. 1921, but so long as the will stands the disposition of the property made by its terms must also stand, as the court cannot make a new will nor direct a different division of the property from that made by the testatrix with the approval of the Secretary of the Interior.
We do not think the case of Blundell v. Wallace, 96 Okla. 26,220 P. 40, cited by counsel for defendant in error, supports their proposition to the effect that under the law of the state of Oklahoma, the least portion of the estate which can be devised and bequeathed to the surviving spouse in the instant case is a one-third interest in the estate of the testatrix.
The Act of Congress April 26, 1906, entitled "An Act to Provide for the Final Distribution of the Affairs of the Five Civilized Tribes," provides that:
"Every person of lawful age and sound mind may, by last will and testament, devise and bequeath all of his estate, real and personal, and all interest therein, provided that no will of a full-blood Indian shall be valid if such last will and testament disinherits the parent, wife, spouse, or children of such full-blood Indian, unless acknowledged before and approved by a judge of the United States court for the Indian Territory, or a United States Commissioner."
It is under this provision of the Act of Congress relating to the Five Civilized Tribes that it was held in the Blundell Case, supra, that section 11224, Comp. St. 1921, was controlling. It will be seen, therefore, that there is no provision in the Act of Congress of April 26, 1906, relative to the making of wills by members of the Five Civilized Tribes that conferred any authority upon the Secretary of the Interior to approve such wills such as is specifically provided for in the act relative to the making of wills by members of the Osage Tribe.
We think the judgment of the district court should be reversed, with directions to dismiss the appeal taken from the county court to the district court.
By the Court: It is so ordered.