## WALKER v. McNEAL.

No. 18352—Opinion Filed Nov. 27, 1928.

Madden & Bland, for plaintiff in error.

Charles West, for defendant in error.

DIFFENDAFFER, C. This action was brought by Ruby McNeal, hereinafter referred to as plaintiff, against P. G. Walker, Jr., and G. C. Stebbins, wherein plaintiff sought to recover from said defendants the sum of $12,556.88. The original petition contained 16 causes of action based upon 16 coupon bonds, being a part of a series of bonds aggregating about $200,000 issued on or about July 1, 1919, by the Choctaw Portland Cement Company, a corporation. Twelve of the bonds sued upon were for $500 each and four were for $1,000 each. Judgment for $12,556.88 was prayed for, $2,556.88 thereof being accrued interest. It was alleged that defendants G. C. Stebbins and P. G. Walker, Jr., had before the issuance of said bonds guaranteed in writing the payment of the bonds and interest at maturity by indorsement thereon for value, waiving protest, notice of protest, and nonpayment.

The petition was filed February 25, 1923. On August 20, 1923, defendants filed their answer, in which they admitted signing the guaranty, but alleged no consideration, and, in substance, that the interest on said bonds had been paid by the Choctaw Portland Cement Company, and that other payments had been made upon the principal in a sum unknown to defendants; and, as their fifth ground of defense, alleged that at the time of execution of the bonds, the Choctaw Portland Cement Company executed its deed of trust to secure the payment of the bond issue, including the bonds held by plaintiff, wherein the Title Guarantee & Trust Company of Tulsa, Okla., was named trustee, and that said trustee had commenced an action in the United States District Court to foreclose the deed of trust, and in that action the legality of the bonds had been admitted and the plant and property described in the deed of trust would be sold to satisfy the bonds, including those of plaintiff, and asked that any money received by plaintiff on account thereof from said trustee be credited on any judgment she might obtain. Plaintiff replied as to all but the fifth ground by gen-

eral denial, and demurred as to the fifth ground in the answer. The cause was continued from time to time, until about June 6, 1925, at which time suggestion of the death of the defendant G. C. Stebbins was made, and the cause was revived as to said defendant in the name of Kate C. Stebbins, as administratrix of the estate of G. C. Stebbins.

Further continuances were had until March 3, 1926, at which time defendants filed an amended answer, wherein they alleged, in substance, that since the institution of this suit, the trustee named in the bonds had obtained a judgment in the United States District Court foreclosing the deed of trust; that the property securing same had been sold; and that the bonds, including all interest, had been fully paid, and that there is nothing due from defendants to plaintiff.

On March 10, 1926, plaintiff filed an amended reply consisting of a general denial, and further alleging:

"That after the maturity of said contract of guaranty, and after the breach by defendants of their said contract by failing to perform the same, because of said breach she was compelled to enter litigation with a third party upon the said bond, to wit, with the Choctaw Portland Cement Company, and was by them thus compelled to file a claim in bankruptcy in the United States District Court for the Eastern District of Oklahoma, in the matter of the Choctaw Portland Cement Company, bankrupt, and therein to ask said bankruptcy court to order the trustee in bankruptcy to cause the mortgage securing said bonds to be foreclosed for the benefit of the plaintiff and others similarly situated. That thereupon the trustee named in said bonds in lieu and instead of the trustee and in bankruptcy proceeded to foreclose said mortgage and sold the property thereby secured, and paid to this plaintiff a sum of money that netted her 90 per cent. of the whole amount due on said bonds and not more. For the reason that this plaintiff was thereby compelled to an expense of an outlay of ten per cent. of the total amount realized in gross attributable under said mortgage to this plaintiff, and thus the defendants have breached their agreement to pay the plaintiff the face of the bonds and interest at maturity to the extent of ten per cent. of the same, to wit, the actual outlay which they compelled her to make in the prosecution of said proceedings with said third person.

"And so plaintiff, having duly replied, prays for judgment of ten per cent. of the original amount prayed for."

The cause was tried to the court, without a jury, resulting in a judgment for plaintiff against both defendants, in the sum of $1,282, with interest at 6 per cent. from May 11, 1925. Motion for new trial was filed by both defendants, and when the same was heard and overruled, defendant P. G. Walker, Jr., alone gave notice in open court of his intention to appeal to the Supreme Court, and is made the only plaintiff in error in the appeal. The appeal is by petition in error and case-made, but the record is certified by the court clerk as a complete transcript.

Defendant in error filed a motion to dismiss the appeal upon the one ground that P. G. Walker, Jr., is the only plaintiff in error, and Kate C. Stebbins, administratrix, is not made plaintiff in error or defendant in error. In support thereof she cites C., R. I. & P. Ry. Co. v. Austin, 63 Okla. 169, 163 Pac. 517; City of Lawton v. Burnett, 72 Okla. 205, 179 Pac. 752; and Penick v. First National Bank, 74 Okla. 85, 176 Pac. 890.

In C., R. I & P. Ry. Co. v. Austin, supra, it was held that defendants, in favor of whom a judgment was rendered in a personal injury case, were necessary parties in an appeal by the defendants against whom judgment was rendered, for the reason that they had an interest in upholding the judgment rendered since they would be called upon to again defend in case the judgment should be reversed and a new trial granted. To the same effect is Penick v. First National Bank, supra, and City of Lawton v. Burnett, supra. In the latter case, it is pointed out that chapter 219, Session Laws 1917, amending section 5238, Rev. Laws 1910, regulating appeals, was not applicable, for the reason that the appeal was perfected prior to the amendment. The same rule would apply to both the other cases cited.

In Mires v. Hogan, 79 Okla. 233, 192 Pac. 811, in paragraph 14 of the syllabus, it was held:

"Section 5238, Rev. Laws 1910, as amended by the act approved March 23, 1917, declaring that 'No appeal shall be dismissed by' this court 'because any party in the court below is not made a party to the appeal,' means no appeal shall be dismissed because a party in the court below is not made a party to the petition in error, the notice of intention to appeal automatically making all parties of record in the lower court adverse parties to the proceedings in error when the same are filed in this court."

Paragraph 15 of the syllabus reads:

"Under section 5238, Rev. Laws 1910, as amended by act approved March 23, 1917, all parties of record in the court from which the appeal is taken, other than the plaintiff in error and parties not appearing at the trial or filing a disclaimer, are parties de-

fendants in error to the proceedings in error in this court, irrespective of whether or not they are named as such in the petition in error; provided, the notice of intention to appeal is given as required by the statute, and the plaintiff in error otherwise appeals in due time by filing petition in error in the appellate court with certified copy of a transcript of the record or proper case-made attached thereto."

In the body of the opinion, the court said:

"If this case had come here on petition in error supported by a case-made, it would be important to inquire whether or not the case-made had been served on defendants in error, as provided for by the act approved March 21, 1917 (Session Laws of 1917, p. 73), it appearing that neither filed a disclaimer, and that both took part in the proceedings below. * * *

"The statute does not require that the notice of intention to appeal name the adverse parties. The notice is notice to all others of record, and when the petition in error is filed here the statute names the defendants in error. The petition in error is not served on any party. It is no longer a pleading. It now performs the office solely of an assignment of errors. The First National Bank of Cashion and Dora Mires are parties, defendants in error, in this case, and may be heard if they so desire. Any other construction ignores the plain letter of the statute.

"This case comes here on a transcript of the record, and it was unnecessary to serve a copy of such transcript on the parties. Consequently there can be no well-founded motion to dismiss on the ground that the record was not served."

In the instant case the appeal is both by transcript and case-made, so that the motion to dismiss is not well taken under the rule announced in Mires v. Hogan, supra.

In Huddleston v. Wallow, 117 Okla. 259, 246 Pac. 585, it was held:

"Chapter 219, S. L. (Comp. Stat. 1921, sec. 782), was not intended to relax or abrogate any existing requirements of the law concerning the preparation, service, settlement, and filing of a case-made for appeal, but relates solely to the method of making all parties of record in the trial court parties of record in this court, and prescribes the kind and character of notice which shall be effective for this purpose."

The appeal in that case was dismissed for failure to serve a copy of the case-made on one of two plaintiffs in whose favor a joint judgment had been rendered, and in explanation of what was meant by "a proper case-made," used in paragraph 15 of the syllabus in Mires v. Hogan, supra, the court said:

"A proper case-made is one which has been prepared, served, settled and filed as required by law."

It would thus appear that, in order to perfect an appeal by petition in error and case-made, under the rules announced, it is necessary to give the notice of intention to appeal, as required by section 782, C. O. S. 1921, and also to serve a copy of the case-made upon all necessary adverse parties as provided by section 785, C. O. S. 1921. See, also, Houghton v. Sealy, 129 Okla. 168, 264 Pac. 140.

We do not think it was necessary under section 785, supra, to serve a copy of the case-made upon Kate C. Stebbins, administratrix. That section in part provides:

"The case so made, or a copy thereof, shall, within 15 days after the judgment or order is rendered, be served upon the opposite party or his attorney."

In re Wah-Shah-She-Me-Tsa-He's Estate, 111 Okla. 177, 239 Pac. 177, in discussing the question who is "the opposite party," the court cites with approval Morrison v. Leach (W. Va.) 47 S. E. 237, wherein it was held that notice to the opposite parties means all parties who have an interest in upholding the decree sought to be reversed. And also McDonald v. Denton (Tex. Civ. App.) 132 S. W. 823, where it was said:

"Where there was no adverse interest between defendants in the trial court, any one of them could appeal * * * without making the other defendants parties."

Furthermore, the record discloses that the case-made was served on plaintiff below by defendants below, acting through their attorneys, and it would appear as vain and useless for a party to serve a case-made upon himself. The case-made having been prepared by defendants and served by them upon plaintiff, and the notice given in open court being sufficient to bring all parties before the court upon appeal, no useful purpose could be saved by requiring one of the defendants below to serve a copy of the case-made upon the other, where the record shows they were acting together in serving the case upon the plaintiff below. The motion to dismiss the appeal should be and is hereby denied.

Considering the appeal upon the merits, it appears from the record, partly by an agreed statement and partly by evidence, that shortly after the action was brought in the instant case, the trustee named in the bonds and deed of trust began an action in Pittsburg county to recover judgment upon bonds held by them and to foreclose the deed of trust; that while that case and the

instant case were pending, some of the creditors of the Choctaw Portland Cement Company, the maker of the bonds, instituted bankruptcy proceedings against the company, and an adjudication in bankruptcy was obtained. The bankruptcy court made an order staying the proceedings in Pittsburg county, and directed the trustee who brought the action to proceed in the bankruptcy court. The creditors, who had begun the action in Pittsburg county, objected, and raised the question of jurisdiction of the bankruptcy court to require the foreclosure in that court. Plaintiff believing that under the circumstances the objections of the petitioning creditors was well taken, and that it was necessary so to do for the benefit of herself as well as defendants as guarantors, filed a claim in the bankruptcy court setting up the security in the way of interest in the deed of trust, and asked the bankruptcy court to require the trustee in bankruptcy, or the trustee mentioned in the deed of trust, to bring an action to foreclose the deed of trust, for the benefit of the persons secured and other creditors of the bankrupt, believing that this procedure would meet the objection raised, and give the bankruptcy court jurisdiction to require the foreclosure. Thereupon the trustee named in the deed of trust brought an action to foreclose the deed of trust, which was contested, and plaintiff was required to attend federal court at Hugo at considerable expense. The deed of trust was foreclosed, and the property sold, resulting in producing a sum sufficient to pay off in full the bonds held by plaintiff, including interest. The federal court allowed the attorney for the trustee an attorney's fee of $7,500. However, plaintiff's attorney was paid the sum of $12,820, which was approximately the full amount of plaintiff's claim, including interest, and was accepted as such, and the bonds assigned by plaintiff to some bank.

The $12,820 less a charge of $1,282 retained by plaintiff's attorney for his services in the matter, which sum was agreed to be a reasonable attorney's fee, was paid to plaintiff, whereby she received a sum $1,282 less than the amount then due on her bonds. Thereupon the amended answer and amended reply hereinbefore set out were filed.

It is claimed by plaintiff that she was entitled to recover the sum of $1,282 from defendant guarantor as damages for their failure to pay the bonds and interest due plaintiff, whereby she was forced to appear in the bankruptcy court, and thus incur liability to her attorney in the sum of $1,282.

Defendants contend that when the full amount of the bonds and interest was paid to plaintiff's attorney from the proceeds of the mortgaged property, this was payment to plaintiff, and was all that they guaranteed and that they were thereby released from their guaranty.

The assignments of error, in so far as they present questions that were presented in the motion for new trial, may be summarized into one proposition, that is, the judgment is contrary to law and the evidence.

The guaranty which the defendants signed reads:

"We, the undersigned, for value received, waiving protest and notice of protest and nonpayment, do hereby guarantee payment of the within bond and interest coupons at maturity."

This is an absolute guaranty under the definition found in 28 C. J. p. 895. In 28 C. J. p. 963, the rule as to the amount of a guarantor's liability is stated as follows:

"The amount of a guarantor's liability is controlled by the terms of the contract of guaranty, as construed by the general rules of construction; and where the terms have been ascertained, the contract will be strictly construed for the purpose of confining the amount of the liability of the guarantor to the precise terms."

As to the liability for costs and attorneys' fees in case of an absolute guaranty, the general rule is stated in 28 C. J. 967, where it is said:

"But in case of an absolute guaranty of payment or performance, since a suit against the principal is not necessary in order to fix the guarantor's liability, the guarantor is not liable for the costs and expenses of such a suit, nor for protest fees, unless such costs and expenses are covered by the terms of the guaranty."

In Woolley v. Van Volkenburg, 16 Kan. 20. where the guaranty was: "We guaranty the payment of the within note," it was held that the guarantor was not liable for protest fees.

In Martin v Blair, Hughes Co. (Tex. Civ. App.) 187 S. W. 505, it was held:

"Where defendant guaranteed a third party's debt due plaintiff, he was liable only for the then existing debt with legal interest, and not for the interest and attorney's fees stipulated in notes subsequently made by the debtor to plaintiff for the debt in question."

In Woodstock Bank v. Downer, 27 Vt. 539, where the guaranty was: "I guarantee that said note is good and the payment of the same," a suit was brought against the mak-

ers, judgment was obtained, and execution returned nulla bona, and suit thereafter brought on the guaranty, and judgment was rendered in the lower court for the amount of the note, and expenses of the suit against the makers. Upon appeal, it was held:

"The defendant, however, was not liable to pay the costs in the suit against the makers. That suit was not necessary to charge the defendant, and the costs should not have been included in the damages."

In some states an attorney's fee is allowed where there is an absolute guaranty indorsed upon a note where the note provides for an attorney's fee, while in other states attorney's fee will not be allowed where suit is brought upon the guaranty. In the instant case, the bonds do not provide for an attorney's fee. It would appear, therefore, that defendants were not liable for an attorney's fee on their guaranty in the action brought upon the guaranty, nor could they be charged with the attorney's fee for appearing in the bankruptcy proceedings against the principal.

It is contended by plaintiff that, by the amended reply, the action becomes one for damages and not for attorney's fee. The contention is that Walker, by his wrongful act, that is, failure to pay the bonds and interest when the same became due, forced plaintiff into litigation with other parties (the cement company, the petitioning creditors, and the trustee in the bonds), and to thus incur the expense, the attorney's fee for appearing in the bankruptcy proceedings, which she seeks to recover as damages.

A number of cases are cited which hold that, where the natural and probable consequences of a wrongful act have been to involve one in litigation with others, the reasonable expense of the litigation may be recovered from the wrongdoer. In none of the cases cited was the wrongful act complained of the breach of an obligation to pay money only. We think the contention of plaintiff cannot be upheld.

Section 5977, C. O. S. 1921, provides the measure of damages for the breach of an obligation to pay money as follows:

"The detriment caused by the breach of an obligation to pay money only is deemed to be the amount due by the terms of the obligation, with interest thereon."

In Kuykendall v. Caldwell, 54 Okla. 331, 153 Pac. 874, and Caldwell v. Kuykendall, 94 Okla. 84, 221 Pac. 84, it was held that, in an action for the breach of a contract for the payment of money only, the measure of damages is the amount written in the note and interest.

As pointed out in Woodstock Bank v. Downer, 27 Vt. 539, supra, it was not necessary to bring an action against the maker of the bonds to charge defendants on their guaranty, nor do we think it was necessary to appear in the bankruptcy proceedings. Plaintiff could have proceeded against defendants, without an action against the cement company, and without appearing in the bankruptcy proceedings.

The guaranty was absolute and judgment could have been obtained against the guarantors independent of any action against the maker of the bonds and independent of the bankruptcy proceeding, but in such action all that could have been recovered was the amount written in the bonds and interest. 28 C. J. 979, par. 135.

In 28 C. J. 1003, the general rule as to payment of principal obligation is stated as follows:

"As a general rule the payment or other satisfaction or extinguishment of the principal debt or obligation by the principal, or by any one for him, discharges the guarantor, and being once discharged, a revival of the debt in any way will not renew his liability."

In Jamieson v. Holm, 69 Ill. App. 119, it was said:

"If by any means the principal is discharged, generally the debt is extinguished, and the guaranty that he will pay it ended. Brandt. Sur. & Guar. Ch. 4."

In Petefish, Skile Co. v. Watson, 124 Ill. 384, it was held:

"If the liability of the principal in a note is discharged by payment, the liability of the surety will be extinguished."

In Georgia State Bldg. & Loan Ass'n v. American Investment & Loan Co., 101 Ga. 413, 29 S. E. 299, it was held that where a judgment was obtained against the principal in proceedings to foreclose a mortgage, which judgment included the amount for which the guarantor was liable, and a sufficient amount was collected from the sale of the property to pay the liability of the guarantor, the amount so realized must be held to extinguish the obligation of the guarantor.

In Carson v. Reid (Cal.) 70 Pac. 89, it was held:

"W. gave his note for $5,200, payable in installments, and his mortgage to secure it. H. gave a mortgage to secure payment of $500 of the note. Held, that H., being a guarantor, his mortgage was discharged by W. paying $500."

We conclude, therefore, that the payment to plaintiff's attorney from the proceeds of

the sale of the mortgaged property of the full amount of the bonds and interest due, was a payment to plaintiff, and the principal obligation was thereby extinguished and the guarantor released.

It follows that the judgment rendered in the trial court was contrary to law and not sustained by the evidence, and should be and is hereby reversed.

BENNETT, LEACH, HERR, and JEFFREY, Commissioners, concur.

By the Court: It is so ordered.