## CITY OF SAPULPA v. YOUNG.

No. 20699. Opinion Filed Jan. 20, 1931.

Rehearing Denied Feb. 24, 1931.

179

C. B. Rockwood, for plaintiff in error.

Wallace & Wallace and Wayne H. Lasater, for defendant in error.

SWINDALL, J. This is an appeal from the district court of Creek county, wherein a judgment was rendered against the city of Sapulpa, plaintiff in error, in favor of Lenora Young, as defendant in error, as damages for personal injuries sustained by her while playing in a public park owned and operated by the city.

The action was originally commenced by Lenora Young, a minor, 14 years of age, by her mother and next best friend, Harriet Young, as plaintiff, against the city of Sapulpa, a municipal corporation, defendant. Later, upon leave of the court first had and granted, an amended petition was filed in which the board of park commissioners, an agency of the said defendant city of Sapulpa, composed of John Ellinghausen, chairman, J. T. Murphy, vice chairman, H. B. Burt, secretary, and Mrs. J. L. Huff, Mrs. Sam Allen, Mrs. E. B. Matthews, C. S. Harper, John R. Miller, and E. A. Uden, members, and John Ellinghausen, former chairman, H. I. Shirley, former secretary, E. B. Matthews, former vice chairman, and W. B. Key, Mrs. Sam Allen, Mrs. E. B. Matthews, and A. J. Whitfield, former members, which said last-named members of the said board are herein sued each in his individual capacity, and Fesler Emmet Lawrence, city manager of the said defendant city of Sapulpa, and the Fidelity & Deposit Company of Maryland, a foreign corporation, were made parties defendant. The parties will hereafter be referred to as they appeared in the trial court.

The facts as shown by the record are substantially true in that the city of Sapulpa owns and maintains a municipal park located in the southwest part of the city and comprising approximately 93 acres of land. Rock creek enters this park at the

northwest corner and meanders through it in a very irregular course leaving the park at the southeast corner. A dam has been erected across the creek near the point where it leaves the park and the waters impounded thereby have been used as a municipal swimming pool. On the east side of the park there is a draw or ravine. The banks of Rock creek, the ravine, and the east side of the park are heavily wooded with native trees and shrubs. The west side of the park for its whole length north and south is a municipal golf course. East of the golf course is a baseball diamond, and east of the baseball diamond is playground equipment for children.

There is a drive winding through the full length of the park. Scattered here and there are flower gardens and picnic grounds. This park is maintained by the city as a free municipal park and the public is invited to use the same for recreation and for pleasure, and was at the time of the alleged accident and for a long time prior thereto used by individuals, families, schools, and civic clubs for such purposes.

Some time prior to Sunday, April 29, 1928, a wire cable was attached to a large elm tree in this park. The cable was approximately 30 feet long and at the lower end a cross-bar was attached and it was used for a swing. The bank of the ravine at the point where this swing was located was steep and about ten or twelve feet high. Persons desiring to swing would take hold of the cross-bar attached to the cable, climb the bank, swing over the ravine and back.

In the circuit of the swing it sometimes passed over stumps in its pathway. These stumps were from 18 inches to two feet high, and persons swinging over them would strike them with their feet unless the stumps were noticed and the feet lifted up out of the path of the swing. In this way the plaintiff received her injury and sought and recovered damages against the defendant on account of its failure to keep the grounds and appliances of the said park in a reasonably safe condition for the purposes named.

As far as the record shows, no one seems to know who erected this swing, but it had existed for some time prior to the time the plaintiff was injured.

There are only two issues submitted to this court for determination: First. The plaintiff contends that the appeal should be dismissed for the reason that all persons who were parties to the proceedings in the trial court and whose interests will be adversely affected by reversal of the judgment were not brought into the appellate proceedings. Second. The defendant contends that the city of Sapulpa was acting in a governmental capacity and is not liable for personal injury sustained by reason of this park being maintained by the city.

The defendant in its brief on petition for rehearing when this cause was dismissed on motion of plaintiff says:

"So that the only question presented to this court for review is, Is the municipality, the city of Sapulpa, liable for personal injury sustained by reason of this park maintained by said city?"

A motion to dismiss was filed by the plaintiff and overruled by order of this court without prejudice to the plaintiff to further presenting the same when the cause was submitted by the respective parties on brief. We shall first dispose of the issue raised by the plaintiff.

At the close of plaintiff's evidence, demurrers were interposed by the respective defendants and the court, upon consideration thereof, sustained all of the several demurrers of the defendants except the demurrer of the city of Sapulpa and overruled the demurrer of said city. Each party excepted to the adverse ruling and decision of the court, and thereupon the defendant, the city of Sapulpa, offered its evidence, and all the evidence of the respective parties having been introduced, the court instructed the jury as to the law of the case and the cause was duly argued and a verdict rendered by the jury in favor of the plaintiff and against the defendant, city of Sapulpa. A motion for a new trial was filed in due time by the defendant, the city of Sapulpa, which was by the court considered and overruled and notice of appeal given in open court to the Supreme Court of the state of Oklahoma, which notice was duly entered upon the records of the trial court as required by law.

The plaintiff, Lenora Young, never filed a motion for new trial as to the defendants who were dismissed from the action when the court sustained their respective demurrers to the evidence offered by the plaintiff. The plaintiff, to sustain her motion to dismiss, cites: Scott v. Amis, 136 Okla. 72, 276 Pac. 215; Houghton v. Sealy, 129 Okla. 168, 264 Pac. 140, and cases therein cited.

In Scott v. Amis, supra, the action was originally commenced by Mildred Amis against J. M. Scott, Phillips Petroleum Company, a corporation, and Devonian Oil Company, a corporation, being an action in tort for damages, plaintiff alleging that the injury complained of was occasioned by the negligence of the three defendants as joint

wrongdoers; the damages claimed by the plaintiff are alleged to have been sustained by her and her two minor children by reason of the wrongful death of L. W. Amis, husband of plaintiff and father of said minor children. The defendants J. M. Scott, Devonian Oil Company and Phillips Petroleum Company each answered separately.

Upon the conclusion of the plaintiff's evidence in chief, the defendants each separately demurred thereto. The demurrers of the defendants Phillips Petroleum Company and J. M. Scott were overruled and exceptions noted by the two last-named defendants to the order overruling their separate demurrers and by the plaintiff to the findings, order, and ruling of the court in sustaining the demurrer of the Devonian Oil Company. The trial proceeded as to the defendants Phillips Petroleum Company and J. M. Scott, and at the conclusion of the evidence the court charged the jury and after argument of the cause it was submitted to the jury, and the jury returned a verdict against Phillips Petroleum Company and J. M. Scott which, omitting formal parts and amount, is as follows:

"We, the jury empaneled and sworn in the above entitled cause, do upon our oaths find the issues for the plaintiff and against the defendants Phillips Petroleum Company and J. M. Scott and fix the amount of her recovery at $———."

The above verdict was signed by the foreman of the jury, and the amount of plaintiff's recovery fixed therein; the amount is omitted here, as the form of the verdict only is necessary in this discussion of the case.

The Phillips Petroleum Company and J. M. Scott filed separate motions for new trial, which were overruled and exceptions allowed and they took separate appeals to this court. The plaintiff, within the time prescribed by law, filed a motion for new trial against the Devonian Oil Company, which motion was overruled and exceptions allowed. The defendants Phillips Petroleum Company and J. M. Scott and the plaintiff Mildred Amis, each within the time prescribed by the Code of Civil Procedure of this state gave notice of their intention to appeal from the said judgments and orders to the Supreme Court of the state of Oklahoma, and within the time fixed by statute the Phillips Petroleum Company and J. M. Scott filed their separate petitions in error or assignment of errors with case-made attached in this court. Mildred Amis never filed a cross-petition in error or cross-assignment of errors from the order overruling her motion for new trial against the Devonian Oil Company. Upon motion being filed in

this court by defendant in error, Mildred Amis, to dismiss the appeal of Phillips Petroleum Company and J. M. Scott, on the ground that no case-made was served on said Devonian Oil Company, that its rights might be prejudicially affected by a modification or reversal of the judgment appealed from, and that it is a necessary party to this appeal, this court in a per curiam decision sustained said motion and dismissed the appeal, and based its per curiam decision upon the following former decisions of this court: Humphrey v. Hunt, 9 Okla. 196, 59 Pac. 971; Kansas City, M. & O. R. Co. v. Williams, 33 Okla. 202, 124 Pac 63; Ft. Smith & W. R. Co v. Wilson, 33 Okla. 280, 124 Pac. 948; Denny v. Ostrander, 33 Okla. 622, 127 Pac. 390; Chickasha Light, Heat & Power Co. v. Bezdicheck, 33 Okla. 688, 126 Pac. 821; Gwinnup v. Griffins, 34 Okla. 117, 124 Pac. 1091; C. R. I. & P. R. Co. v. Austin, 63 Okla. 169, 163 Pac. 517, L. R. A. 1917D, 666; City of Lawton v. Burnett, 72 Okla. 205, 179 Pac. 752.

None of these decisions are authority in that case, for the reason that the same were approved by this court long before section 5238, Rev. Laws of 1910, was amended by the act of the Legislature approved March 23, 1917, and under the law then in force all parties to the action of the trial court who were necessary parties, or whose rights might be materially affected by the appeal, had to be brought into the Supreme Court by service of case-made, and when the case-made with petition in error attached was filed in the Supreme Court, within the time fixed by statute, a summons in error was required to be issued thereon, which summons in error was required to be served as in the commencement of the action; however, that section as amended expressly provides that upon giving notice of intention to appeal as provided therein,

"All parties of record in the court from which such appeal is to be taken shall become parties to the appeal in the Supreme Court, and no further notice shall be required to be served upon them of such appeal, and no appeal shall be dismissed by appellate courts of this state because any party in the court below is not made a party to the appeal, but such notice above provided and showing intention to appeal shall automatically make all parties of record in lower court parties in the appellate court."

Section 5238, Rev. Laws of 1910, as amended by the Act of the Legislature approved March 23, 1917, and now appearing as section 782, C. O. S. 1921, was first construed by this court in the case of Mires.

v. Hogan, 79 Okla. 233, 192 Pac. 811, decided September 21, 1920, and we do not feel that this court should follow some decision construing section 5238, Rev. Laws of 1910, prior to the amendment of March 23, 1917, but should be governed by the authorities since that date in so far as the same may be applicable to the particular case under consideration, and in this opinion we shall attempt to point out wherein the per curiam decision is not in harmony with the decisions of this court as they existed at the time of the rendition of the per curiam decision in this case.

In the case of Merriett v. Newton, 67 Okla. 150, 169 Pac. 488, this court held that:

"The right of appeal is governed by the law applicable thereto at the time the judgment appealed from is rendered. Hence it is held that section 1, chapter 219, of the 1917 Session Laws, with reference to giving notice of appeal, is not applicable to an appeal from a judgment rendered March 1, 1917, since that law did not become effective until March 23, 1917."

This decision announces the departure from the old rule and the approach of the new rule under the amendment of 1917.

Recently this court, in Walker v. McNeal, 134 Okla. 111, 272 Pac. 443, held that the decisions of this court construing section 5238, Rev. Laws of 1910, prior to the amendment of March 23, 1917, were not applicable to appeals perfected since such amendment. In the body of that opinion, Commissioner Diffendaffer, at page 444, says:

"In C., R. I. & P. Ry. Co. v. Austin, supra, it was held that the defendants, in favor of whom a judgment was rendered in a personal injury case, were necessary parties in an appeal by the defendants against whom judgment was rendered, for the reason that they had an interest in upholding the judgment rendered, since they would be called upon to again defend in case the judgment would be reversed and a new trial granted. To the same effect is Penick v. First National Bank, supra, and City of Lawton v. Burnett, supra. In the latter case, it is pointed out that chapter 219, Session Laws of 1917, amending section 5238, Rev. Laws of 1910, regulating appeals, was not applicable, for the reason that the appeal was perfected prior to the amendment. The same rule would apply to both the other cases cited."

This decision calls attention to the taking effect of the amendment and the intended force and effect thereof, as construed by this court since the amendment.

If said decisions were not controlling in Walker v. McNeal, they are not controlling in this case. This court in Walker v. Mc-

Neal follows Mires v. Hogan, supra, and quotes with approval, In re Wah-shah-she-me-tsa-he's Estate, 111 Okla. 177, 239 Pac. 177, which is a case decided by this court since the amendment of section 5238, supra. The last case will be hereafter more fully discerned.

In re Wah-shah-she-me-tsa-he's Estate, this court quoted with approval from McDonald v. Denton (Tex. Civ. App.) 132 S. W. 823, where it is said:

"Where there was no adverse interest between defendants in the trial court any one of them could appeal * * * without making the other defendants parties."

It is not contended in this case and it was not contended in Scott v. Amis, supra, that there was any adverse interest between defendants in the trial court.

The facts, in so far as the necessary parties to be served with case-made are concerned and as to the issue relative to joint and several judgments, are the same in the case at bar as in Scott v. Amis, supra, except in the case at bar the plaintiff never filed a motion for a new trial against the discharged defendants and never gave notice of her intention to appeal from the findings, order, and judgment of the trial court sustaining the demurrer of the discharged defendants to the evidence of the plaintiff in so far as it related to them.

We are now convinced that this court was in error in sustaining the motion to dismiss the case in Scott v. Amis, supra, as the opinion in that case is in conflict with Mires v. Hogan, supra, and In re Wah-shah-she-me-tsa-he's Estate (Penn. v. Shon-Kah-Tsa-A) 111 Okla. 177, 239 Pac. 177, and other cases hereinafter discussed. In the last-mentioned case, this court said:

"Section 782, O. O. S. 1921, declaring that 'no appeal shall be dismissed by' this court 'because any party in the court below is not made a party to the appeal,' means no appeal shall be dismissed because a party in the court below is not made a party to the petition in error; the notice of intention to appeal automatically making all parties of record in the lower court adverse parties to the proceedings in error when the same are filed in this court."

In Mires v. Hogan, supra, this court in a very carefully considered opinion, delivered by Mr. Justice Ramsey, holds:

"Under section 5238, Rev. Laws 1910, as amended by the Act of the Legislature approved March 23, 1917 (Laws of 1917, c. 219), notice of intention to appeal as therein provided, coupled with the filing in this

court of a petition in error and proper record, confers jurisdiction upon this court over all the parties to the judgment and proceedings complained of, except parties to the action below who did not appear at the trial and take part in the proceedings from which the appeal is taken, and parties who filed a disclaimer in the trial court."

Also, that:

"Parties to the action, who did not appear at the trial and take part in the proceedings from which the appeal is taken, and parties who filed a disclaimer in the trial court, may be made parties plaintiffs or defendants to proceedings in error in this court, on such terms as this court may direct, upon it appearing that such party or parties might be affected by the reversal of judgment or order complained of."

And that:

"Section 5238, Rev. Laws of 1910, as amended by the Act approved March 23, 1917, declaring that 'no appeal shall be dismissed by' this court 'because any party in the court below is not made a party to the appeal,' means no appeal shall be dismissed because a party in the court below is not made a party to the petition in error; the notice of intention to appeal automatically making all parties of record in the lower court adverse parties to the proceedings in error, when the same are filed in this court."

And further that:

"Under section 5238, Rev. Laws 1910, as amended by Act approved March 23, 1917, all parties of record in the court from which the appeal is taken, other than the plaintiff in error and parties not appearing at the trial or filing a disclaimer, are parties defendants in error to the proceedings in error in this court, irrespective of whether or not they are named as such in the petition in error, provided the notice of intention to appeal is given as required by the statute, and the plaintiff in error otherwise appeals in due time by filing petition in error in the appellate court, with certified copy of a transcript of the record or proper case-made, attached thereto."

In the body of the opinion, the court says:

"Section 5238, R. L. 1910, as thus amended by said Act of March 23, 1917, not only substitutes the notice in open court of the intention to appeal for the issuance and service of summons in error, which is abolished, but expressly declares that 'notice in open court * * * of his intention to appeal to the Supreme Court' makes 'all parties of record in the court from which such appeal is to be taken * * * parties to the appeal in the Supreme Court,' and declares that 'no further notice shall be required to be served upon them of such ap-

peal, and no appeal shall be dismissed by the appellate courts of this state because any party in the court below is not made a party to the appeal, but such notice provided and showing intention to appeal shall automatically make all parties of record in lower court parties in the appellate court'."

Quoting further from the body of the opinion, the court says:

"It is insisted that the plaintiff in error should have made the First National Bank of Cashion and Dora Mires parties to his petition in error; that while summons in error is abolished, and the notice of appeal, when the appeal is perfected, brings the parties into the Supreme Court, nevertheless they ceased to be parties unless they are made defendants in error or plaintiffs in error in the petition in error. The statutory declaration that 'No appeal shall be dismissed by the appellate courts of this state because any party in the court below is not made a party to the appeal' means that 'no appeal shall be dismissed by the appellate courts of this state because any party in the court below is not made a party to the appeal, in the petition in error.' This must be what is meant; otherwise, the declaration that 'no appeal shall be dismissed * * * because any party in the court below is not made a party to the appeal' is meaningless and wholly unnecessary, because the very paragraph of which it is a part declares that the notice in open court of the intention to appeal makes 'all parties of record in the court from which such appeal is to be taken * * * parties to the appeal in the Supreme Court' and declares that 'no further notice shall be required to be served upon them of such appeal', and declares that such notice 'shall automatically make all parties of record in lower court parties in the appellate court.' Now, if the notice in open court, or notice served as provided in the statute, makes all parties to the record in the lower court parties to the appeal in this court, and automatically makes them such parties in this court (all of which such notice accomplishes), the additional statement that 'no appeal shall be dismissed * * * because any party in the court below is not made a party to the appeal' must mean that no appeal shall be dismissed because any party in the court below is not made a party to the petition in error."

The court further holds that:

"Upon giving notice in open court, either at the time the judgment is rendered or within 10 days thereafter, of intention to appeal to this court, or if the judgment is rendered within less than 10 days from the expiration of the term, and notice is given within 10 days after the rendition of the judgment, and an entry of such notice is made by the clerk of the court on the trial

docket, this court acquires jurisdiction over all the parties, upon the filing in this court of a petition in error, with case-made or certified transcript of record attached, within 6 months after the rendition of the judgment or order complained of, as provided by section 5255, R. L. 1910, as amended by the Act of the Legislature approved February 14, 1911. * * * Since the amendment of section 5238, R. L. 1910, by the act approved March 23, 1917, the petition in error serves only the functions of an assignment of errors. Prior to the amendment of March 23, 1917, the petition in error was in the nature of an original pleading (2 Standard Proc. 293), and the issuance of summons in error, based upon the petition in error with record attached, constituted the commencement of a proceeding in error. McMurtry v. Byrd, 23 Okla. 597, 101 Pac. 1117; Court of Honor v. Wallace, 23 Okla. 734, 102 Pac. 111; Williams v. Paullin, 24 Okla. 694, 104 Pac. 342; St. Louis & S. F. R. Co. v. Rierson, 38 Kan. 359, 16 Pac. 443.

"Prior to the amendment of March 23, 1917, the petition in error performed the office of a pleading and assignment of errors. Since that amendment, it is nothing more nor less than the ordinary assignment of errors. Being in the nature of an original pleading prior to the amendment of March 23, 1917, it was just as necessary for it to name the parties plaintiff and defendant as for a bill in equity or an original petition under the Code of Civil Procedure to name the parties. It was not only necessary for the petition in error to name the parties, but a summons in error had to issue out of this court and be served, or service waived. The main purposes of the amendment of March 23, 1917, were to sustain the jurisdiction of this court on appeal, in spite of the inability of plaintiff or plaintiffs in error to obtain service of summons in error upon the parties, and also to end as far as possible the frequently arising difficult problem of who is and who is not a necessary party to the proceedings in error.

"We are not concerned in this case with the construction of the second paragraph of the Act of March 23, 1917, further than to say, argumentatively, that it expressly declares that neither a party to the action below, who did not appear at the trial and take part in the proceedings from which the appeal is taken, nor a party who filed a disclaimer in the trial court, is a necessary party to the proceedings in error in this court, although such omitted party may be made a party plaintiff or defendant in error in this court on such terms as this court may direct, 'upon its appearing that he might be affected by the reversal of the judgment or order from which the appeal was taken.' The second paragraph of the amendatory act of March 23, 1917, is based largely upon the assumption that neither a party who did not appear and take part in

the proceedings from which the appeal is taken, nor a party who filed a disclaimer in the trial court, was actually or constructively present at the time the judgment was rendered or took further notice of the record in the case. Notice of intention to appeal 'shall automatically make all parties of record in lower court parties in the appellate court,' and we conclude from a careful examination of the amendatory act that all parties to the proceedings in the lower court, except parties who did not appear and take part in the proceedings from which the appeal is taken, and except parties who filed a disclaimer in the trial court, are automatically made parties, defendants in error, in this court, irrespective of whether their names are mentioned as such in the assignment of errors, or, as otherwise denominated by the statute, petition in error. The statute does not require that the notice of intention to appeal name the adverse parties. The notice is notice to all others of record, and when the petition in error is filed here the statute names the defendants in error. The petition in error is not served on any party. It is no longer a pleading. It now performs the office solely of an assignment of errors. The First National Bank of Cashion and Dora Mires are parties, defendants in error, in this case, and may be heard if they so desire. Any other construction ignores the plain letter of the statute."

If the First National Bank of Cashion and Dora Mires were parties defendant in error in Mires v. Hogan, supra, then the Devonian Oil Company was a party defendant in error in Scott v. Amis, supra, and might have been heard if it so desired, but Mildred Amis was not entitled to a dismissal of the action. The Devonian Oil Company might have moved to dismiss the appeal of plaintiff as to it, because the plaintiff below, defendant in error, Mildred Amis, did not file her cross-petition in error or assignment of errors within six months after the order was entered in the trial court overruling her motion for new trial as against it.

The Devonian Oil Company had no interest in upholding the judgment of Scott v. Amis, and the Phillips Petroleum Company, as it is not a party to that judgment, it being a several judgment in favor of Mildred Amis and against Scott and Phillips Petroleum Company, and Mildred Amis alone was the adverse party to Scott and Phillips Petroleum Company, and the only party to the proceedings interested in upholding the judgment or that could have been materially or prejudicially affected by a reversal or modification of the judgment.

If Mildred Amis had, within six months

after the court entered its order denying her motion for a new trial filed against Devonian Oil Company, filed her cross-petition in error in this court against Devonian Oil Company, and served it with a brief, it would have been very much interested in upholding the judgment in its favor, sustaining its demurrer to the evidence of plaintiff in the court below; but after the six months within which Mildred Amis could have filed her cross-petition in error against it expired and none was filed, the Devonian Oil Company went out of the picture and was not an adverse party or interested in upholding a judgment to which it was a stranger.

We are of the opinion that by filing her motion for new trial within the time provided by law, and giving notice in open court of her intention to appeal from the decision of the trial court sustaining the demurrer of defendant Devonian Oil Company, dismissing the action as to the Devonian Oil Company, a corporation, the Devonian Oil Company was automatically made a party defendant in the action on appeal, and when the case-made was served on Mildred Amis, that she was the only adverse party to the action in the trial court, and that service of the case-made upon her was all that was required, and she having preserved her rights to bring up the Devonian Oil Company, if she had desired to do so, she could have filed her cross-assignment of error on appeal and served a brief on counsel for the Devonian Oil Company, and all parties being before the court, if any portion of the record necessary to a full determination as to the Devonian Oil Company was omitted, upon the request of either party the case-made could have been amended to show the omitted facts, the only requirement necessary being that her cross-assignments of error or petition in error be filed in this court within six months from the date of the judgment or order appealed from.

This view of the case finds support in the case of Title Guaranty & Surety Co. v. Foster, 84 Okla. 291, 203 Pac. 231, wherein this court, in an opinion delivered by Mr. Justice Ramsey, says:

"This brings us to the plaintiff's cross-appeal against the American Surety Company. The plaintiff, as cross-plaintiff in error, did not prepare and serve any case-made, nor file any case-made or transcript of the record in this court with his cross-petition in error and it is contended that his cross-petition in error must be dismissed. The plaintiff did everything necessary to invoke the jurisdiction of this court to review that part of the judgment adverse to

him except prepare and serve a case-made and file the same in this court with his petition in error. The record shows that the cross-petitioner in error filed a motion for a new trial on the ground that the court erred in exonerating the American Surety Company from liability on its $500 lease bond executed by the guardian on the 9th day of November, 1903, conditioned to be void if the guardian leased the land of his ward with fidelity and well and faithfully accounted for all moneys, rents, profits, and other things of value received by him under such lease. The record also shows that he gave notice of his intention to appeal to the Supreme Court as required by section 5238, R. L. 1910, as amended by the Act of the Legislature approved March 23, 1917 (Laws 1917, c. 219). Within the six months allowed for commencing proceedings in error plaintiff filed his cross-petition in error, assigning as error the action of the trial court in exonerating the company from liability on said $500 bond. His cross-petition in error will not be dismissed because he failed to prepare and serve a case-made, it appearing that a true and correct case-made was settled and signed in due time at the instance of the American Surety Company and filed in this court. The making, serving, and filing a separate case-made would have uselessly incumbered the record. Rules of procedure are not promulgated to defeat justice or to render its administration expensive, hazardous, and inconvenient, but to reasonably aid in protecting and enforcing rights."

The 16th paragraph of the syllabus in that case is as follows:

"The filing of a cross-petition in error attached to a transcript or case-made previously filed in the Supreme Court to reverse or modify the judgment or final order of the trial court is the commencement of a proceeding in error in the Supreme Court at the instance of the party filing the cross-petition in error. Such constitutes a cross-appeal, and such cross-appeal will not be dismissed because the cross-plaintiff in error did not prepare, serve, and have settled a case-made and file the same with his cross-petition in error; it appearing that the cross-petitioner filed a motion for a new trial and gave notice or appeal, as provided by section 5238, Rev. Laws 1910, as amended by Act approved March 23, 1917 (Laws 1917, c. 219)."

Certainly Mildred Amis had no right to secure a dismissal of the case because the Devonian Oil Company was not served with the case-made, as under the holding of the case of Mires v. Hogan and In re Wah-shah-she-me-tsa-he's Estate, supra, the notice of appeal automatically made the Devonian Oil Company a party to the action, and by filing her cross-assignments of error and preparing

her brief and serving the same upon the Devonian Oil Company, this court would have had complete jurisdiction on appeal to determine whether or not the trial court committed error in sustaining the demurrer to the evidence offered by the Devonian Oil Company.

Houghton v. Sealy, supra (129 Okla. 168, 264 Pac. 140) is not in point for the reason that in that case:

"* * * An action commenced in the district court of Tulsa county by the Magnolia Petroleum Company, as plaintiff, against C. E. Houghton, defendant, on a promissory note in the sum of $12,000, and for the foreclosure of a mortgage on certain lots in the city of Skiatook. By permission of the court, Julia Haas intervened in said action, and filed an answer and cross-petition. By her cross-petition, she alleged that defendant had executed to her a mortgage on the same real estate included in plaintiff's mortgage to secure a note in the sum of $5,000, and asked that her mortgage be decreed a prior lien, that her mortgage be foreclosed, the real estate sold, and that the proceeds be applied in the following order: In the payment of taxes, costs, in satisfaction of her judgment, and the balance, if any, applied on plaintiff's claim. The cause was tried to the court on the 5th day of June, 1925, at which time all parties appeared in person and by their counsel. The court found that both plaintiff and intervener, Julia Haas, were entitled to judgment for the full amount of their respective claims and to have their respective mortgages foreclosed. The court further found that the mortgage of Julia Haas was a first and prior lien on said real estate, ordered the same foreclosed, and the property sold, and the proceeds thereof applied in the following order: (1) To the payment of taxes due on said land; (2) to the payment of court costs herein; (3) to the payment of the judgment herein rendered in favor of the interpleader, Julia Haas; (4) to the payment of the judgment herein in favor of the plaintiff, Magnolia Petroleum Company.

"On praecipe of plaintiff an order of sale was issued, appraisement was had, and the real estate was sold on the 12th day of September, 1925, and plaintiff became the purchaser thereof for the sum of $14,000. Plaintiff then filed its motion to confirm said sale, and defendant filed a motion to vacate the sale on the ground that the same was void. The first mortgage contained a waiver of appraisement, and the second mortgage contained the following provisions:

"'And the said party of the first part for said consideration does hereby waive (or) not waive appraisement of the option of the said second party, its heirs and assigns.'

"The court, having heard the motions, sustained plaintiff's motion to confirm the sale, and overruled defendant's motion to set aside the sale. From the order of the court overruling defendant's motion to set aside the sale, defendant has appealed. After plaintiff had paid the purchase price to the sheriff, the court issued an order to the sheriff to disburse said funds by paying the costs in the amount of $112.64, the taxes in the amount of $465.89, and the payment of the amount of $465.89, and to the payment of cluding interest and attorney's fees, in the amount of $5,942.99. The amount of the judgment was accordingly paid by the sheriff to Julia Haas out of said funds.

"The jurisdiction of this court to entertain said appeal has been challenged by plaintiff by a motion to dismiss defendant's appeal. The case-made was served upon plaintiff, but was not served upon Julia Haas, nor was she given notice of the time and place of presenting the case-made to the trial judge for signing and settling, and it does not appear that she appeared on any occasion during the progress of the appeal. This being true, plaintiff asserts that the case-made is a nullity, and the appeal should be dismissed. Case-made, not having been served on Julia Haas, is a nullity as to her, and if she is a necessary party to the appeal, the case-made is a nullity for all purposes, and the appeal should be dismissed.

"Section 785, C. O. S. 1921, requires that the case-made or a copy thereof be served upon the opposite party or his attorney. In the case of In re Wah-shah-she-me-tsa-he's Estate, 111 Okla. 177, 239 Pac. 177, it was held that the expression 'opposite party' means all parties who have an interest in upholding the decree sought to be reversed. 'Opposite' is a synonym of 'adverse.' It is apparent that the interest of Julia Haas was in the beginning adverse to that of defendant, but defendant asserts in substance that her judgment having been paid in full, she has no interest in upholding the decree sought to be reversed.

"Defendant by his appeal asserts that the order of sale was void by reason of the same having been issued before the expiration of six months from the date of judgment, and asks that the order of sale be vacated by reason of the same having been issued before the expiration of six months from the date of judgment, and that the order of the trial court be reversed. If this court, in passing on the merits of this appeal, should hold that the order of sale was void, and reverse the cause, what position would Julia Haas be in? She would have received $5,942.99 by virtue of a void sale, and no doubt could be compelled to repay that amount. It may be that, in such event, plaintiff would desire to be subrogated to the rights of Julia Haas, or that the real estate would sell for a sufficient amount

so that she would still realize the full amount of her judgment. But should the order of sale be set aside, the property again would have to be offered for sale, and we have no assurance that it would sell for even a sufficient sum to pay her judgment. It is likely that the most valuable part of the property is the improvements located thereon, and certainly should such improvements be consumed by fire, another sale would not bring as good a price as the first sale. It would then seem that the interest of Julia Haas might be vitally and prejudicially affected by a reversal of this cause, and that she is a necessary party to the appeal. All persons who were parties to the proceedings in the trial court and whose interest will be affected by the modification or reversal of the judgment or order on appeal are necessary parties on appeal. Weisbender v. School District No. 6, 24 Okla. 173, 103 Pac. 639; Swanson v. Bayless, 51 Okla. 37, 151 Pac. 683; Spaulding Mfg. Co. v. Dill, 25 Okla. 395, 106 Pac. 817; Hawkins v. Hawkins, 35 Okla. 641, 130 Pac. 926."

So it will be seen from the quoted portion of the findings of this court in the case of Houghton v. Sealy, supra, that the same has no bearing upon, and is not in point in the case under consideration. As said by Commissioner Jeffrey in that case: "It is apparent that the interest of Julia Haas was in the beginning adverse to that of defendant," and further, that the judgment would materially affect her, as she might be required to repay the money which had been paid to her in the original action.

No such issues are involved in the Scott v. Amis Case, supra, or in the case at bar. In Scott v. Amis, a demurrer was sustained to the evidence in so far as the action related to the Devonian Oil Company, and it was eliminated from the picture only in so far as the plaintiff by filing a motion for new trial, and giving notice of appeal, as provided by law, automatically made it a party on appeal, and she could have presented cross-assignments of error against the Devonian Oil Company in this court. In our opinion, this court should have so held in that case, and as said before, we are of the opinion that the decision in that case is not in accord with the statute, section 5238, as amended, and should not be followed, and that it is predicated upon the authorities of this state construing section 5238, as it existed prior to the amendment of March 23, 1917, and that is conclusively shown in the opinion of Scott v. Amis, supra, for the reason that this court in that opinion cited cases decided prior to the amendment of March 23, 1917, and nowhere mentions

the case of Mires v. Hogan, supra, or Title Guaranty & Surety Co. v. Foster, supra. This court further held in Scott v. Amis "that In re. Wah-shah-she-me-tsa-he's Estate, 111 Okla. 177, 239 Pac. 177, was not in point for the reason that this court in that case held that the judgment was a several judgment and not a joint judgment," and therefore the holding in that case had no application to the condition of the case in Scott v. Amis. That is just another instance in which the rule announced in Scott v. Amis is not sound, and this court fell into error, for the reason that the judgment in Scott v. Amis was a several judgment. The judgment showed that a demurrer was sustained to the evidence in so far as it related to the Devonian Oil Company, and the cause dismissed as to it and proceeded as between Amis, as the plaintiff, and the Phillips Petroleum Company, a corporation, and J. M. Scott, as defendants, and a verdict returned by the jury in favor of the plaintiff and against Scott and the Phillips Petroleum Company, a corporation, as shown by the form of the verdict hereinbefore set out in this opinion. It would have been contrary to the pleadings and the verdict for the trial court to have rendered a joint judgment on that condition of the record, and the judgment in that case shows clearly that the judgment was a several judgment, and not a joint judgment.

"A judgment in a court of record must be based upon definite and regular proceedings, which the record must disclose." Ayers v. Dobson & Hughes, 5 Stewart & Porter (Ala.) 441; also, 33 C. J. 1132 par. 80.

In the case of Frisbie et al. v. McFarlane et al. (Pa.) 46 Atl. 359, the Supreme Court of Pennsylvania says:

"The verdict having been rendered jointly against both plaintiffs, and the judgment against one only of them, he is entitled to a reversal."

And that:

"A judgment must conform to the verdict on which it is entered."

In the case of Stewart v. Pruett and Williams, 6 La. Ann. 727, the Supreme Court of Louisiana holds that:

"Where joint trespassers have been permitted to sever in their answers and separate verdicts have been rendered against each, the court cannot enter up a judgment against them in solido. The judgment must follow the verdict."

In Kuykendall et al. v. Coulter, 26 S. W. 748, the Court of Civil Appeals of Texas says: "A joint and several judgment may

be rendered on a joint note." See, also, Southern Kansas Ry. Co. of Texas et al. v. Crump, 74 S. W. 335.

In the case of Richards v. Scott et al., 65 Pac. 433, the Supreme Court of Idaho held that:

"In a joint action against numerous defendants, where a several verdict is found, it is error to enter a joint and several judgment."

In the case of Brooks v. Collier et al., 58 S. W. 559, the Court of Appeals of Indian Territory held that:

"Where, in an action of slander by plaintiff and his brother, a joint verdict was rendered in their favor, a judgment based thereon in favor of plaintiff's brother alone was erroneous, since a several judgment cannot be entered on a joint verdict."

"Where the verdict is joint, the judgment must be joint; where several, the judgment must be several." Allen v. State, 34 Tex. 230; 11 Enc. Pl. & Prac. 907.

In Volume 1 of Freeman on Judgments, page 173 (5th Ed.) par. 100, we find this language:

"A judgment may be joint or several, from the standpoint of both the plaintiffs and the defendants, depending upon whether or not it is for or against them as a unit. In other words, if the same relief is granted to all the parties it is joint as to them, and if the same relief is granted against all the defendants it is a joint judgment against them, while if the relief granted differs as to different plaintiffs or defendants it is from that point of view several rather than joint. This distinction between joint and several judgments, however, has no necessary connection with the question of the nature of the resulting obligation or liability, since a joint judgment creates a joint and several liability. Read v. Jeffries, 16 Kan. 534. Whether a judgment should be joint or several depends upon the character and extent of the right or obligation and the relief incident to its breach. Where the rights and obligations of the parties are joint, a joint judgment is proper and except as otherwise provided by a statute, is necessary (Hulsman v. Todd, 96 Cal. 228, 31 Pac. 39; Shafer v. Hewitt, 6 Colo. App. 374, 41 Pac. 509; Seymour v. Richardson Fueling Co., 205 Ill. 77, 68 N. E. 716; Ross v. Carr, 15 N. M. 17, 103 Pac. 307), pursuant to the common-law rule requiring the judgment in such case to be for or against all of the parties plaintiff or defendant. Where parties are sued jointly a joint judgment may be entered for or against them in a proper case, though they have answered separately. (Myers v. Moulton, 71 Cal. 498, 12 Pac. 505; Leadbetter v. Lake, 118 Cal. 515, 50 Pac. 686; Union Oil Co. v. Merc. Ref. Co., 8 Cal. App. 768, 97

Pac. 919.) So a joint judgment may be entered in favor of defendants whose separate general demurrers have been sustained. McCurren v. Garrity, 68 Cal. 566, 9 Pac. 839. When plaintiff is nonsuited as to two defendants a joint judgment in their favor is proper, though as to one the nonsuit was by consent but as to the other it was contested.

"But where the rights of the parties and the relief to which they are entitled are different the judgment may not be joint but should be several. If several plaintiffs properly join, but their causes of action are separate and distinct and their damages may be different, the judgment should not be for an aggregate sum but should segregate and award to each the damages or relief to which he is properly entitled. This situation must of course be distinguished from cases involving recovery of a trust fund in which several persons are interested, or analogous cases such as actions for wrongful death by the survivors, where the amount recovered is a fund for the reimbursement of the damages suffered by them individually. If a husband's claim for his injuries is joined with a claim for injuries to his wife, in an action by both, and there is a recovery on both claims, a joint judgment in favor of both is improper. There can be no joint judgment against defendants if neither the complaint nor the proof shows a joint liability, even though they may be severally liable. (Pierce v. Minturn, 1 Cal. 470.) Thus where defendants sued jointly in ejectment, answer separately and the findings show they are individually and severally in possession of separate parts of the land, a joint judgment is erroneous; it should be several in accordance with the findings."

And further in the same section, we find this:

"Generally a several judgment may be rendered when a several action could have been maintained."

In paragraph 104, the author uses this language:

"At common law, in a joint action, whether upon a joint or a joint and several contract, or upon several distinct contracts, the general rule was that there could be no judgment except for or against all of the defendants. To this rule the exceptions, involving purely personal defenses, were: 1. In cases where one or more of the defendants, admitting the contract, established a discharge therefrom, as by bankruptcy. 2. Where some one of the defendants pleaded and proved that he was incapable of contracting when the alleged contract was made, from some disability, as infancy. So unyielding was the rule that when one of the defendants suffered a default or confessed the action, no judgment could be given against him, if his codefendant succeeded in maintaining some defense affecting the en-

tire contract. The reason given for the general rule is that the pleading and proof must correspond. This rule is not broken by allowing a recovery against some of the defendants where the other or others establish a purely personal defense. Personal defenses are those not available to other defendants, and as already indicated include not only a discharge in bankruptcy or insolvency, and personal disability to contract, such as infancy, insanity and coverture, but any other similar defense which relieves one or more of the defendants from the original joint liability without releasing the others, as in the case of the discharge of a surety by an extension of time for payment or a statute of limitations affecting only one of the parties.

"In the absence of statute every judgment against any joint defendant is irregular until the other is out of the action, and the issues against him disposed of. Until then he has the right to appear at every trial of the issues. And a continuance of the action as to one joint defendant invalidates a judgment as to the other."

However, as pointed out in paragraph 105, the author further says:

"But statutes and codes of procedure adopted in many of the states have abolished or greatly modified the general common-law rule. These statutory provisions vary much in their phraseology and have not always been construed with uniform results. Some of them provide that judgment may be given for or against 'one or more of several plaintiffs, and for or against one or more of several defendants'; and 'that in an action against several defendants, the court may, in its discretion, render judgment against one or more of them, leaving the action to proceed against the others whenever a several judgment is proper.' Under these statutes, of two persons sued jointly one may obtain a judgment against the plaintiff, and the other be subjected to a judgment in the plaintiff's favor. And in general, a several judgment may properly be rendered whenever a several action can be sustained, as in case of a joint and several obligation either contractual or tortious. But notwithstanding such code or statutory provisions, where only common defenses are maintained, the judgment must be against all or none. While in a proper case the court has discretion to determine whether a separate judgment shall be entered as to some, after it has exercised its discretion and entered such a judgment it has no discretion to refuse to proceed to judgment as to the others."

In 33 Corpus Juris, commencing at page 1110, paragraph 64, under the subject of "Judgments," we find the rule to be announced in very similar language to that found in Mr. Freeman's excellent work on Judgments. Paragraph 64 is as follows:

"At common law, and in the absence of statute changing the rule, where several plaintiffs join in common-law action, all must recover or none, and if only part of plaintiffs have a right of action, the suit must fail as to all. This rule has been very generally changed by codes and practice acts so as to permit the recovery of a judgment by any plaintiff who shows himself entitled, although the others may fail, as where the claims of the several plaintiffs are distinct although sufficiently united by a common interest to authorize their joinder in a single suit."

Paragraph 65 reads:

"At common law, and in the absence of statute changing the rule, if several defendants are joined in an action ex contractu, and all are brought before the court by service or appearance, it is essential to plaintiff's recovery that he should establish a joint liability; he must recover against all or none, and it is not competent to enter a judgment in favor of one defendant and against another.

"Although the foregoing rule has been long and well established, it is not universal; whenever a defendant pleads matter which goes to his personal discharge, or any matter that does not go to the nature of the writ, or pleads or gives in evidence a matter which is a bar to the action against himself only, and of which the others could not take advantage, judgment may be for such defendant and against the rest."

Paragraph 66, relative to tort actions, reads:

"In an action for tort against several defendants plaintiff may recover against so many of the defendants as the proof shows were guilty of the wrong, and those defendants as against whom the proof fails are entitled to a verdict. The court may grant a new trial to one or more of several defendants if satisfied that they were wrongly convicted, and may render judgment upon the verdict as to the remainder. The rule that plaintiff must recover against all joint defendants or none is limited to actions on contracts, and has no application to actions for torts, except where the action is in case for a negligent performance of, or a negligent failure to perform, a duty arising out of a contract, in which case the rule is the same as in actions on contract, and, if a joint contract and liability is alleged, a joint liability must be shown. But where the relation of the parties is such that an issue found for one defendant necessarily inures to the benefit of his codefendant, judgment cannot be entered against the latter."

(Citing in support of the rule of "respondeat superior" that, "But where the relation of the parties is such that an issue found for one defendant necessarily inures to the ben-

efit of his codefendants, judgment cannot be entered against the latter." Patterson v. Risher, 143 Ark. 376, 221 S. W. 468; St. Louis & S. F. Ry. Co. v. Williams, 55 Okla. 682, 155 Pac. 249; C., R. I. & P. Ry. Co. v. Austin, 43 Okla. 698, 144 Pac. 1069; Sipes v. Puget Sound Electric R. Co., 54 Wash. 47, 102 Pac. 1057; Doremus v. Root, 23 Wash. 710, 63 Pac. 572, 54 L. R. A. 649.)

Paragraph 68 treats of the modification of common-law rule by statutes in the several states, and is as follows:

"In many states statutes provide in substance that judgment may be given 'for or against one or more of several defendants,' and usually provide further that, in an action against several defendants, 'the court may in its discretion render judgment against one or more of them, leaving the action to proceed against the others whenever a several judgment is proper.' Such statutes are applicable in actions for tort as well as in actions on contract, although there is less frequent need of invoking the statute in tort actions. Under these statutes, if a plaintiff sues two or more defendants on an obligation, alleged to be joint, or joint and several, he is no longer compelled to establish a joint cause of action against all, but a judgment may be taken against the party or parties shown to be liable, when the others are not liable. It is the intent of such statutes to apply to all actions founded on contract the same rule with regard to the right of recovery against a part of the defendants which prevails at common law in the case of actions founded on torts, or, as some authorities say, to adopt the rule prevailing in equity as to joint defendants. But these statutes do not permit the rendition of a several judgment, on a joint cause of action; that can be done only where a several judgment would be proper; if plaintiff sues on a joint obligation, and the proofs show only a joint obligation, he must recover against all jointly liable or none, as at common law; but if the proofs show a several obligation, or a joint obligation as to two or more defendants less than all, a recovery may be had against those shown to be liable regardless of the fact that only a joint obligation was alleged. The true test as to whether a separate judgment may be had is whether a separate action could have been maintained. By statute in many jurisdictions joint obligations have been made joint and several."

Paragraph 70, treating of statutory joint judgments, says that:

"By a widely adopted class of statutes commonly known as 'joint debtor acts,' which have been sustained as essentially constitutional, and which were enacted to supersede the necessity of proceeding to outlawry against one not found or brought into court, it is provided in substance that, where one

or more defendants are sued upon a joint obligation, and process is served upon one or more but not upon all defendants, plaintiff may proceed against those served, unless the court otherwise directs, and recover a judgment in form against all the defendants, which is good as a personal judgment against defendants who were served, or who appeared, and enforceable against their separate property, and the joint property of them and the absent defendant, located within the state, but against the latter's individual property."

We have quoted extensively from Mr. Freeman's work on Judgments, and from Corpus Juris on the subject of joint and several judgments, for the reason that our statute contains provisions very similar to those set forth in the text heretofore cited. The sections of our Code amending the common-law rule are as follows: Section 222, C. O. S. 1921, provides that:

"Persons severally liable upon the same obligation or instrument, including the parties to bills of exchange and promissory notes, and indorsers and guarantors, may all or any of them be included in the same action, at the option of the plaintiff."

Section 224 provides that:

"The court may determine any controversy between parties before it, when it can be done without prejudice to the rights of others, or by saving their rights; but when a determination of the controversy cannot be had without the presence of other parties, the court must order them to be brought in."

Section 258, C. O. S. 1921, as amended by chapter 186, Session Laws of 1925, page 291, is as follows:

"Service on some of several defendants. Where the action is against two or more defendants and one or more shall have been served, but not all of them, the plaintiff may proceed as follows:

"First: If the action be against defendants jointly indebted upon contract, tort, or any other cause of action, he may proceed against the defendants served, unless the court otherwise direct; and if he recover judgment, it may be entered against all the defendants thus jointly indebted, so far only as that it may be enforced against the joint property of all, and the separate property of the defendants served; and if they are subject to arrest, against the persons of the defendants served.

"Second: If the action be against defendants severally liable, he may, without prejudice to his rights against those not served, proceed against the defendants served in the same manner as if they were the only defendants."

The amendment made to section 258, as

above set forth, is the clause, "tort, or any other cause of action."

The section relative to entering joint and several judgments is 663, C. O. S. 1921, and reads as follows:

"Judgment may be given for or against one or more of several plaintiffs, and for or against one or more of several defendants; it may determine the ultimate rights of the parties on either side, as between themselves, and it may grant to the defendant any affirmative relief to which he may be entitled. In an action against several defendants, the court may, in its discretion, render judgment against one or more of them, leaving the action to proceed against the others whenever a several judgment may be proper. The court may also dismiss the petition with costs, in favor of one or more defendants, in case of unreasonable neglect on the part of the plaintiff to serve the summons on other defendants, or proceed in the cause against the defendant or defendants served."

In the case of Atlantic & Pacific R. Co. v. Mary J. Laird, 164 U. S. 393, 41 Law Ed. 485, the Supreme Court of the United States in an opinion delivered by Mr. Justice White says:

"So, in the case at bar, there was a duty shown, independently of contract; and the trial court, looking at the allegations of a complaint which had not been demurred to, solely for the purpose of determining the propriety of an amendment, was manifestly justified in holding that the right to recover was not founded upon the breach of a contract, but upon the neglect of a common-law duty. The action therefore was ex delicto, and the defendants, being joint tort-feasors, might have been sued either separately or jointly at the election of the injured party, and, if, upon the trial, the proof warranted, a recovery might have been had against a single defendant. Session v. Johnson, 95 U. S. 347.

"The right of recovery against one of several joint tort-feasors thus existing is in principle analogous to the rule declared by Chitty at page 386 of his work on Pleading, to the effect that in torts the plaintiff may prove a part of the charge if the averment be divisible and there be enough proof to support his case. This is illustrated at page 392, where Chitty says:

"'In an action ex delicto, upon proof of part only of the injury charged, or of one of several injuries laid in the same count, the plaintiff will be entitled to recover pro tanto, provided the part which is proved afford per se a sufficient cause of action, for torts are, generally speaking, divisible'."

And further that:

"But even though the action was founded upon a contract, under the rules of practice in California a recovery might have been had against either defendant. Thus, in Shain v. Forbes, 82 Cal. 583, which was an action against two defendants to recover compensation for professional services alleged to have been rendered for them jointly by an attorney at law, pending the action one of the defendants died. It was argued that the testimony of a certain witness, not being admissible against the representatives of the deceased defendant, was not competent for any purpose, because the action was joint, and that no several judgment could be rendered against the surviving defendant. To this argument the Supreme Court answered:

"'It is true that the rule contended for existed at common law, but from the earliest time it has been changed by statute in this state. The Code provides: "Judgment may be given for or against one or more of several plaintiffs, and for or against one or more of several defendants, and it may, when the justice of the case requires it, determine the ultimate rights of the parties on each side as between themselves." Cal. Code Civ. Proc. paragraph 578. And this was but a re-enactment of section 145 of the old practice act. Under this provision it has been held that where two persons are sued jointly upon a joint contract, judgment may be rendered in favor of the plaintiff against one of the defendants, and in favor of one of the defendants against the plaintiff. Rowe v. Chandler, 1 Cal. 168; Lewis v. Clarkin, 18 Cal. 399; People v. Frisbie, 18 Cal. 402. * * * In our opinion a several judgment might have been rendered against McPherson.'

"It results that if the nature of the action was not changed, the amendment merely dismissing one of two joint tort-feasors and alleging that the injury complained of was occasioned solely by the remaining defendant did not introduce a new cause of action."

There are three different rules in regard to the effect of a judgment against a tort-feasor on the liability of a co-tort-feasor, namely:

1. "In England the law is settled that merely obtaining a judgment against one bars further recovery against another for the same wrong. This rule is adopted by a few American decisions."

The only states that we have been able to find holding to that rule are Virginia and Rhode Island. See Petticolas v. Richmond, 95 Va. 456, 28 S. E. 566, and Parmenter v. Barstow, 21 R. I. 410, 43 Atl. 1035.

2. "Numerous authorities in the United States hold that taking out execution on a judgment against a tort-feasor is an election to proceed against that one, which precludes

further recovery, although satisfaction is not obtained."

3. "The American rule, as settled by the great weight of authority, is that a judgment without full satisfaction, against one, is no bar to an action against another for the same wrong."

See Gilbreath v. Jones, 66 Ala. 129; Dawson v. Schloss, 93 Cal. 194, 29 Pac. 31; Chetwood v. California Nat. Bank, 113 Cal. 414, 45 Pac. 704; Woodworth v. Gorsline, 30 Colo. 186, 69 Pac. 705; Vincent v. McNamara, 70 Conn. 332, 39 Atl. 444; Norfolk Lumber Co. v. Simmons (Dela.) 43 Atl. 163; Wanack v. People, 187 Ill. 116, 58 N. E. 242; Turner v. Hitchcock, 20 Iowa, 310; Elliot v. Porter (Ky.) 30 Am. Dec. 689; Jones v. Lowell, 35 Me. 541; Knight v. Nelson, 117 Mass. 458; McReady v. Rogers, 1 Neb. 124; Hyde v. Noble, 13 N. H. 494; Palmer v. New York News Pub. Co., 52 N. Y. S. 539; Martin v. Buffaloe, 128 N. C. 305, 38 S. E. 902; Maple v. Cincinnati, H. & D. R. Co., 40 Ohio St. 313; Allen v. Liggett, 81 Pa. 486; Hawkins v. Hatton (S. C.) 9 Am. Dec. 700; Christian v. Hoover, 6 Yerg. (Tenn.) 505; Sanderson v. Caldwell, 2 Aik. (Vt.) 195; Griffie v. McClung, 5 W. Va. 131; Lovejoy v. Murray, 3 Wall. (U. S.) 1, 18 L. Ed. 129.

We have tried to point out herein that under the American rule, as announced by the great weight of authority, and under the statutes of this state, a several judgment may be rendered when a several action could have been maintained. The defendants in this action could have been sued separately and therefore separate judgment rendered against them, and in fact a separate judgment was entered in favor of the defendants who were dismissed from the action, as shown in the case-made attached to the petition in error, when the court sustained the demurrer of the board of park commissioners and of the individuals composing the board of park commissioners and dismissed the action as to them, and proceeded with the trial as between Lenora Young, as plaintiff, and the city of Sapulpa, a municipal corporation, as defendant, and a separate verdict was returned in favor of the plaintiff and against the city of Sapulpa, as shown by the case-made at page 284, the judgment being entered upon the several verdict in favor of Lenora Young and against the defendant city of Sapulpa, a municipal corporation. Under the amended petition, the plaintiff asks she may have judgment against each and all of the defendants individually and collectively. The plaintiff never filed a motion for new trial as to the defendants that were dismissed from the action when the court sustained the demurrer of the board of park commissioners and individual members of said board of park commissioners and individual members of said board, and therefore the plaintiff in this case cannot be heard to complain because the case-made was not served upon them, for if a case-made had been served upon them, they could properly move the dismissal of the action on appeal in so far as they are concerned, for the reason that no motion for new trial was filed by plaintiff as against them, and they are out of the case.

The plaintiff contends that the board of park commissioners and the individuals composing said board will be adversely affected by a reversal of the judgment sought to be reversed. We cannot agree to this contention. The discharged defendants were never adverse to the plaintiff in error, and could not in any way be affected by a reversal or modification of the judgment in this case. A demurrer was sustained to the evidence in so far as it related to them, and no motion was ever filed for new trial by the plaintiff as to them and they are out of the case and may go on their way rejoicing.

In the case of Harper et al. v. Rutland Saving Bank, 79 Okla. 274, 192. Pac. 1101, following Gruble v. Ryus, 23 Kan. 195, it was held that:

"The ruling upon a demurrer to the evidence is a decision occurring on the trial; and, in order to enable the Supreme Court to review such ruling, it is necessary that a motion for a new trial be made and filed within the time prescribed by law."

The plaintiff, defendant in error, did not file a motion for a new trial and the judgment sustaining the demurrer of the board of park commissioners and the individuals composing said board has become final and cannot now be reviewed here, and we see no reason why they should have been served with case-made.

This court in Bilby v. Cathcart et al., 51 Okla. 189, 151 Pac. 688, held that:

"Errors occurring on the trial of a cause are not reviewable in this court, unless the same were brought to the attention of the trial court by motion for a new trial and acted upon, and such motion and the ruling thereon preserved by bill of exceptions included in a transcript or incorporated in a case-made, filed with a petition in error in this court."

The only judgment involved in this appeal is the separate judgment entered on the

separate verdict in favor of the plaintiff, Lenora Young, and against the city of Sapulpa.

The plaintiff also relies upon C., R. I. & P. Ry. Co. v. Austin, cited with approval in Scott v. Amis, supra. As stated before, C., R. I. & P. Ry. Co. v. Austin was held by this court not to be applicable in so far as it relates to appeals, for the reason that the statute has been amended since that case was decided. It is not applicable on the question of joint judgments for the reason that this court very clearly pointed out in the first appeal of C., R. I. & P. Ry. Co. v. Austin et al., 43 Okla. 698, 144 Pac. 1069, wherein Mr. Justice Kane, in delivering the opinion for the court, says:

"In an action for damages for personal injuries, where a railway company and several of its employees who were charged with the commission of the acts of negligence which caused the injury were joined as parties defendant, and where from the negligence pleaded and the proof made the railway company, if liable at all, is liable upon the principle of respondeat superior, it is error to render judgment against the railway company upon the verdict of the jury which found in favor of the plaintiff as against the railway company and in favor of one of the employees; separate demurrers to the evidence having been sustained as to the others."

So, in the second appeal, found in 63 Okla. 169, 163 Pac. 517, this court in an opinion by Mr. Justice Hardy correctly held that the judgment was a joint judgment and that all parties to the joint judgment were necessary parties on appeal.

This court also in St. L. & S. F. R. Co. et al. v. Williams, 55 Okla. 682, 155 Pac. 249, in the third syllabus, held the same as it did in C., R. I. & P. Ry. Co. v. Austin, supra, but there is no issue in the case at bar involving the principle of respondeat superior, and, as pointed out in Corpus Juris, supra, where the principle of "respondeat superior" arises, it is an exception to the general rule and a joint judgment must be rendered or no judgment at all.

There are some very well-considered decisions by able jurists holding that:

"When a master is made liable for the negligent or wrongful act of his servant solely upon the ground of the relationship between them, under the doctrine of 'respondeat superior,' and not by reason of any personal share in the negligent or wrongful act, by his presence or express direction, he is liable severally only, and not jointly with the servant." Warax v. Cincinnati, N. O. & T. P. Ry. Co., 72 Fed. 638.

The principle of "respondeat superior" is not involved in Scott v. Amis, supra, and the judgment in that case was a several judgment, and the judgment in the case at bar is a several judgment, and no person is interested in upholding the judgment except. Lenora Young, and the only defendant that is an adverse party is the city of Sapulpa, Okla.

Where the action is dismissed as to part of the defendants on order of the court, or the court sustains a demurrer of the plaintiff to the evidence as to one or more of the defendants and not as to all of them, or a verdict is returned in favor of one or more defendants and not as to all of them and a verdict is returned in favor of the plaintiff and against the other defendant or defendants, and the defendant or defendants against whom the verdict is returned desire to appeal and the plaintiff also desires to appeal from the order dismissing some or all of the other defendants from the suit, or the plaintiff desires to appeal from a verdict in favor of some of the defendants and against the plaintiff as to said several judgment, and if the parties so desiring to appeal file their respective motions for a new trial and the same are denied, and if the parties so desiring to appeal give notice of their intention to appeal as required by law, they thereby make all parties parties to the appeal, except parties to the action below who did not appear at the trial and take part in the proceedings from which the appeal is taken, and parties who filed a disclaimer in the trial court, and the appealing parties or either of them may prepare and serve a case-made upon the party adverse to them in the lower court, and if the judgment is a joint judgment or if any other party brought into this court by the notice of appeal has an interest in upholding the judgment or decree sought to be reversed, the case-made should be served upon such party or parties, but if the judgment be several, then any party to the several judgment may appeal by serving notice upon the party or parties adverse to him in the judgment appealed from. For illustration: Say, A. sues B. and C. as joint wrongdoers, or in any case in which a several judgment may be properly entered, and a verdict is rendered in favor of A. and against B., and a verdict is rendered in favor of C. and against plaintiff A., and A. and B. each, within the time provided by law, file separate motions for a new trial and each are denied by the trial court, and A. and B. give notice of their intention to appeal from the orders overruling their respective motions for a new trial, by

this procedure all parties, except parties to the action below who did not appear at the trial and take part in the proceedings from which the appeal is taken, and parties who filed a disclaimer in the trial court, are automatically made parties on appeal. Then A. has a case-made prepared and serves the same upon B. within the time provided by the order of the court. A. is the only party adverse to B. in the several judgment and the only party upon whom B. is required by the laws in force at this time to serve the case-made. But A. has filed a motion for new trial against C. and the same has been denied, and he desires to prosecute his assignment of errors on appeal against C., so when the case-made is served upon him, if it is not complete, and does not contain a statement of so much of the proceedings and evidence or other matters in the action as may be necessary to present the errors complained of to the Supreme Court, as between A. and C., then A. should suggest such amendments as may be necessary to enable him to prosecute his cross-assignment of errors, and then when the case-made is settled and signed A. may file his cross-petition or assignment of errors in this court within six months next after the date the judgment or order appealed from was entered in the trial court, and he may then prepare and serve his brief upon C., and C. is a party on appeal, having been given notice of the intention of A. to appeal, as required by law, and by such notice is automatically made a party on appeal. When C. is served with the brief of A. he may examine the case-made and if it does not meet the requirements of section 784, C. O. S. 1921, and cannot be so amended as to contain a statement of so much of the proceedings and evidence or other matters in the action as may be necessary to present the errors complained of in the cross-petition in error, then this court should dismiss the action in so far as it relates to the cross-petition in error. So, if the plaintiff, A., should make a proper showing in this court that the case-made served upon him by defendant B. and filed in the court below and attached to the petition in error on assignment of errors, does not meet the requirements of section 784, C. O. S. 1921, and cannot be so amended as to contain a statement of so much of the proceedings and evidence or other matters in the action as may be necessary to present the errors in his petition in error or assignments of errors, then this court should dismiss the action in so far as it relates to the petition in error and not as to the cross-petition, unless, as stated before, the cross-

petition is also fatally defective as to that portion of the appeal. If the case-made is correctly prepared, or may be so amended as to present the errors assigned in the petition in error, and the cross-petition in error, or either of them, then the appeal should not be dismissed, but all parties to the appeal who have an interest to protect either under the petition in error or cross-petition in error should brief their respective assignments of error as provided for in the rules of this court if they have the burden of sustaining the assignments of error or any of them, and the parties who do not have the laboring oar should file their answer briefs as required by the rules of this court. So we hold that:

1. Where a civil action is commenced in a court of record in which, under the pleadings, evidence, and verdict, it is proper to enter a several judgment, as provided for under the statutes of this state, the court may give judgment for or against one or more of several plaintiffs, and for or against one or more of several defendants; it may determine the ultimate rights of the parties on either side, as between themselves, and it may grant to the defendant any affirmative relief to which he may be entitled. In an action against several defendants, the court may, in its discretion, render judgment against one or more of them, leaving the action to proceed against the others whenever a several judgment may be proper. The court may also dismiss the petition with costs, in favor of one or more defendants, in case of unreasonable neglect on the part of the plaintiff to serve the summons on other defendants, or proceed in the cause against the defendant or defendants served, in accordance with the terms and provisions of section 663, C. O. S. 1921.

2. A judgment in a court of record must be based upon definite and regular proceedings, which the record must disclose.

3. The ruling upon a demurrer to the evidence is a decision occurring on the trial; and, in order to enable the Supreme Court to review such ruling it is necessary that a motion for a new trial be made and filed within the time prescribed by law, and if the motion for a new trial is overruled, the party desiring to appeal from the order denying the motion for a new trial must give notice of intention to appeal as provided by section 782, C. O. S. 1921.

4. In an action where a several judgment may be properly entered, and upon the conclusion of plaintiff's evidence the defendants demur thereto, and upon consideration of the demurrer the court sustains the same as to part of the defendants and overrules it as to one or more of the defendants, and the plaintiff desires to appeal to this court from the judgment sustaining the demurrer, it is

the duty of the plaintiff to except to the judgment at the time and within the time fixed by statute to file a motion for a new trial, and if the same is overruled, to save an exception and give notice of intention to appeal from said judgment to this court as provided by law and to perfect an appeal to this court within six months from the date of the order overruling such motion.

5. Errors occurring on the trial of a cause are not reviewable in this court, unless the same were brought to the attention of the trial court by motion for a new trial and acted upon, and such motion and the ruling thereon preserved by bill of exceptions included in a transcript or incorporated in a case-made, filed with a petition in error in this court. Bilby v. Cathcart et al., 51 Okla. 189, 151 Pac. 688.

6. If a plaintiff recovers a judgment against one or more of the defendants and the defendant or defendants file a motion for a new trial within the time provided by law and give notice of intention to appeal and prepare and serve a case-made on plaintiff within the time fixed by law, or, as extended by order of the court or a judge thereof, and a true and correct case-made is settled and signed at the instance of the defendant or defendants against whom a judgment was rendered and filed in this court, and the plaintiff files and causes to be attached to the case-made filed in this court, within six months after the date of the several judgment or order plaintiff is appealing from a cross-petition in error, this meets the requirements of the laws of this state now in force. Title Guaranty & Surety Co. v. Foster, 84 Okla. 291, 203 Pac. 231.

7. When a several judgment is properly entered in an action, the case-made is only required to be served by the party appealing upon the adverse party to the several judgment appealed from.

8. Where there was no adverse interest between defendants in the trial court, any one of them may appeal, without making the other defendants parties. In re Wah-shah-she-me-tsa-he's Estate, supra.

9. The case-made may be prepared by any one or more parties desiring to appeal, who have preserved their right to appeal by filing a motion for a new trial, where one is required, and giving notice of appeal as required by law, and that the case-made is prepared and served within the time fixed by law or extended by order of the court or a judge thereof, and that said case-made is true and correct and settled and signed in due time and filed in this court within the time allowed by law with a petition in error and a cross-petition or cross-petition in error attached.

10. The case-made must contain a statement of so much of the proceedings and evidence, or other matters in the action, as may be necessary to present the errors complained of to the Supreme Court, but it is not necessary for the several appellants to each make, serve, and file a separate case-made, as such a course of procedure would uselessly incumber the record.

11. The filing of a cross-petition in error attached to a transcript or case-made previously filed in the Supreme Court to reverse or modify the judgment or final order of the trial court is the commencement of a proceeding in error in the Supreme Court at the instance of the party filing the cross-petition in error. Such constitutes a cross-appeal, and such cross-appeal will not be dismissed because the cross-plaintiff in error did not prepare, serve, and have settled a case-made and file the same with his cross-petition in error; it appearing that the cross-petitioner filed a motion for a new trial and gave notice of appeal, as provided by section 5238, Rev. Laws 1910, as amended by Act approved March 23, 1917 (Laws 1917, c. 219).

12. Section 782, C. O. S. 1921, declaring that "no appeal shall be dismissed by" this court "because any party in the court below is not made a party to the appeal," means no appeal shall be dismissed because a party in the court below is not made a party to the petition in error; the notice of intention to appeal automatically making all parties of record in the lower court adverse parties to the proceedings in error when the same are filed in this court.

13. Under section 5238, Rev. Laws 1910, as amended by the Act of the Legislature approved March 23, 1917 (Laws 1917, c. 219), notice of intention to appeal as therein provided, coupled with the filing in this court of a petition in error and proper record, confers jurisdiction upon this court over all the parties to the judgment and proceedings complained of, except parties to the action below who did not appear at the trial and take part in the proceedings from which the appeal is taken, and parties who filed a disclaimer in the trial court.

14. Under section 5238, Rev. Laws 1910, as amended by Act approved March 23, 1917, all parties of record in the court from which the appeal is taken, other than the plaintiff in error and parties not appearing at the trial or filing a disclaimer, are parties defendants in error to the proceedings in error in this court, irrespective of whether or not they are named as such in the petition in error, provided the notice of intention to appeal is given as required by the statute, and the plaintiff in error otherwise appeals in due time by filing petition in error in the appellate court, with certified copy of a transcript of the record or proper case-made attached thereto.

15. This court will determine for itself whether the record is such as it has juris-

diction to review, and if not, whether the case-made may be corrected as provided in section 786, C. O. S. 1921, so as to present the errors complained of in the petition in error or a cross-petition in error, or either or both. Lillard v. Meisberger, 113 Okla. 228, 240 Pac. 1067.

This, in our opinion, is the clear legislative intent of sections 663, 782, and 785, C. O. S. 1921, and such, in our opinion, is the construction of the two last-mentioned sections by this court in Mires v. Hogan, 79 Okla. 233, 192 Pc. 811, and in Re Wah-shah-she-me-tsa-he's Estate, 111 Okla. 177, 239 Pac. 177, Title Guaranty & Surety Co. v. Foster, 84 Okla. 291, 203 Pac. 231, Walker v. McNeal, 134 Okla. 111, 272 Pac. 443, and Berg v. Willibey, 138 Okla. 110, 280 Pac. 456.

To follow the rule herein stated will give vitality to the holding of this court in Title Guaranty & Surety Co. v. Foster, supra, that:

"Rules of procedure are not promulgated to defeat justice or render its administration expensive, hazardous, and inconvenient, but to reasonably aid in protecting and enforcing rights."

The case of Scott v. Amis, supra, is therefore expressly overruled, and the motion to dismiss in this cause is denied.

We have gone into this issue to the extent we have for the reason that the proposition is still frequently presented, argued, and urged under the rule announced by this court prior to the amendment of section 5238, Rev. Laws 1910, by the Act of the Legislature approved March 23, 1917, and this court seems to have overlooked the amendment in Scott v. Amis, supra.

On the question of the liability of a municipal corporation for injuries received in consequence of negligent conditions existing in a public park maintained by the city, the authorities are divided.

A number of the states hold that, taking into consideration that parks are established with the view and for the purpose of furnishing to the people at large a place for free recreation to promote the health and welfare of the general public and as a means of adding to the beauty of a city, a municipality in maintaining a public park is engaged in a governmental activity, discharging public duties, and is therefore not liable for injuries caused by negligence therein. The states so holding are California, Georgia, Kansas, Kentucky, Massachusetts, Michigan, Minnesota, Nebraska, New Jersey, Rhode Island, Tennessee, Washington, and Wisconsin. See Kellar v. Los Angeles, 179

Cal. 605, 178 Pac. 505; Cornelisen v. Atlanta (Ga.) 91 S. E. 415; Hibbard v. Wichita, 98 Kan. 498, 159 Pac. 399; Park Com'rs v. Prinz, 127 Ky. 460, 105 S. W. 948; Bolster v. Lawrence, 225 Mass. 387, 114 N. E. 722; Heino v. Grand Rapids, 202 Mich. 363; Emmons v. Virginia, 152 Minn. 295, 188 N. W. 561; Caughlan v. Omaha, 103 Neb. 726, 174 N. W. 220; Bisbing v. Asbury Park, 80 N. J. 416, 78 Atl. 196; Blair v. Granger, 24 R. I. 17, 51 Atl. 1042; Nashville v. Burns, 131 Tenn. 281, 174 S. W. 1111; Russell v. Tacoma, 8 Wash. 156, 35 Pac. 605; Bernstein v. Milwaukee, 158 Wis. 578, 149 N. W. 382.

There seem to be as many or more states holding that it is the duty of a city owning and operating a public park to exercise ordinary care to keep the same in a reasonably safe condition for the benefit of persons lawfully using the same, and that in maintaining its parks the city is not acting in a purely governmental capacity, but in its proprietary or private capacity. Cases holding to this view are: Kokomo v. Loy, 185 Ind. 18, 112 N. E. 994; Bloom v. Newark, 3 Ohio N. P. (N. S.) 480; Capp v. St. Louis, 251 Mo. 345, 158 S. W. 616; Denver v. Spencer, 34 Colo. 270, 82 Pac. 590; Ehrgott v. N. Y., 96 N. Y. 264; Weber v. Harrisburg, 216 Pa. 117; Barthold v. Philadelphia (Pa.) 26 Atl. 304; Boise Development Company v. Boise City, 30 Idaho, 675, 167 Pac. 1032; Norburg v. Hagna, 46 S. D. 568, 195 N. W. 438; Ramirez, Administrator, v. City of Cheyenne (Wyo.) 241 Pac. 710; Byrnes v. City of Jackson (Miss.) 105 So. 861; Warden v. City of Grafton (W. Va.) 128 S. E. 375; Pennell v. Wilmington (Del.) 78 Atl. 915.

Our court in the case of City of Anadarko v. Swain et al., 42 Okla. 741, 142 Pac. 1104, said:

"Where, in an action for damages for the death of their eight year old minor son, the plaintiffs show that the city maintained a public park within the corporate limits of the city of Anadarko, and had constructed within the boundaries of said park a settling basin or reservoir in connection with its waterworks system, and had placed a high wire fence around the base of the incline of said settling basin for the purpose of avoiding injuring the public, and the evidence further shows that, just prior to the death of said child, the agents and employees of the city removed a large portion of said fence, and negligently allowed the same to remain down for a long period of time, and during said time the minor son of the plaintiffs went into the park and on to the grounds used for waterworks purposes and was attracted to the reservoir by his curi-

osity and childish instinct and was drowned, held, that the child was upon the premises by express invitation, and the city owed to him the duty of using ordinary care to avoid injuring him while on the premises."

The marked conflict in the cases relative to the liability of municipalities for negligence in the maintenance of public parks has chiefly been due to the different views the courts have entertained as to the relation the parks of a city occupy toward the city and its inhabitants. The law appears to be well settled that a municipal corporation in the preservation of the public peace, public health, maintenance of good order and enforcement of the laws for the safety of the public, possesses governmental functions and represents the state, and is not liable for the torts of its officers or agents, but where the corporation exercises powers and privileges which are permissive and not mandatory, or which are peculiarly for the benefit of the corporation, then the municipality acts in a proprietary or private capacity.

While the city may be maintaining the parks for recreation and improving the health of its citizens, it is not required by law to furnish to the public a park, as there is no mandatory duty upon the city to furnish parks. The right is permissible rather than mandatory, and we think when the city undertakes to maintain a park and to keep therein certain equipment for the pleasure, amusement, and recreation of the citizens of the city and the public generally who are invited to enter the same, it must be held to be the duty of the city to maintain the park in a reasonably safe condition for those lawfully using the same.

During the open and warm seasons of the year the parks are usually filled with women and minor children of the city who enter the same for recreation and amusement. One of the most important, if not the principal quality or beneficial elements of a public park, is the safety it throws around the unprotected youth and indiscreet of the state placed therein by the toiling parents, chiefly for the safeguards supposed to be thrown around them and incidentally for play and recreation.

We feel that it would be announcing a very harsh rule to hold that the children of the city or the public generally who play in a city park for the purposes of pleasure, amusement, recreation, and improving their health should be invited to a place of danger where they might lose their lives or be maimed or injured. When the city invites them into its parks for health and recreation, it is the duty of the city to use ordinary care in providing them a reasonably safe place for such recreation, so we hold that a city must keep its public parks in a reasonably safe condition for the benefit of all persons using them.

The rule here announced is in harmony with Capp v. City of St. Louis, supra, Warden v. City of Grafton, supra, Ramirez, Administrator, v. City of Cheyenne, supra, Byrnes v. City of Jackson, supra, and Norburg v. Hagna, supra, and the other cases which hold that a city in maintaining its public parks acts in a proprietary or private capacity rather than a governmental capacity.

The city is not liable for damages occasioned by the dangerous condition of its parks until notice of such dangerous condition is brought home to it, or such condition has existed for such a length of time that it is chargeable with notice of the unsafe condition, the same as it is liable for defective streets and sidewalks.

The issue of notice is expressly waived in this case for the reason that counsel for defendant states that the case is being presented solely upon the question of whether or not the city in maintaining its public parks was acting in a purely governmental capacity.

However, we have carefully examined the record and are convinced that the evidence shows that the defendant, city of Sapulpa, was chargeable with notice of the unsafe condition of the park and that there is no material error shown by the record.

The judgment of the trial court is therefore affirmed.

LESTER, C. J., CLARK, V. C. J., and RILEY, HEFNER, and McNEILL, JJ., concur.

CULLISON and ANDREWS, JJ., absent.