### CITY OF GUYMON v. FINICUM.
### No. 35236.

Supreme Court of Oklahoma.
Dec. 15, 1953.

Rehearing Denied Jan. 19, 1954.

Lamar & Bailey, Frank Ogden, Guymon, for plaintiff in error.

Rizley, Tryon & Sweet, Guymon, for defendant in error.

ARNOLD, Justice.

This is a suit against the City of Guymon for personal injuries sustained by the collapse of bleachers in the City Park of Guymon.

The plaintiff in an effort to sustain the allegations of his petition showed that he attended a ball game open to the public at said place on September 5, 1948; that the bleachers were full; that the grandstand upon which he was sitting collapsed throwing him violently to the ground, breaking some of his bones, causing him great pain and suffering for months and that certain permanent injuries have resulted from said injuries. As to negligence in the construction or maintenance of the grandstand there is no proof. There was no direct proof of unsafe condition of the grandstand for the purpose intended at the time the accident occurred or theretofore.

The award of damages by the jury is not questioned as to amount.

The defendant offered testimony to show that the grandstand was originally constructed by private persons in 1945; that until its removal to the City Park it was used at the fair grounds, which real estate is owned by the City of Guymon, by various civic organizations such as 4–H Clubs and F. F. A.; that said grandstand was moved from place to place at said fair grounds by the users thereof to suit their convenience; that this grandstand without contractual relationship with the City of Guymon was moved from the fair grounds to the City Park by the owners of the city ball club of Guymon, and placed in proper position at the baseball diamond in said park; that at that time the grandstand was in safe condition; that on the night of the occurrence of the accident in question a young boy in an effort to climb up and over the rear of the grandstand knocked off a scantling or a board brace; that immediately thereafter the grandstand collapsed; that it had no notice of any character of the condition of the grandstand from the time of its removal to the City Park and the date of the accident, 1948; that the City of Guymon had no knowledge of the condition of said grandstand after its removal to the City Park;

that the city had no contract with those who moved the grandstand to the City Park and thereafter exercised complete control of its use; that the city never inspected the grandstand, made any repairs on it nor gave any directions in the matter of control and maintenance thereof. It is contended that there was no liability on the part of the city because the city was not shown to have any control over the use or maintenance of the grandstand and no notice of negligent or unsafe condition and causal connection.

■ The ownership of the real estate on which the grandstand was located and the public use thereof is conclusively shown, in fact admitted. Such a public amusement is laudable and of interest to a city because of public concern. Whatever the deal was between the city and the ball club it was in furtherance of the public interest. The city permitted the use of its property for the amusement and entertainment of the public. The city recognized the public need and voluntarily exercised its duty in the manner conclusively shown. A city cannot escape its responsibility to the public by purportedly releasing its privilege and duty to inspect and keep in reasonably safe condition a city park where the use of the city-owned real estate is for public entertainment and recreation.

Conceding for the sake of argument that it was necessary that notice, actual or constructive, be given the city of the unsafe condition of the grandstand an instruction on the point, requested, prepared and presented to the court by defendant was given. On the question of unsafe condition and notice the evidence is that the grandstand was built of scrap lumber in 1945; that it had been pulled around from place to place at the fair grounds since its construction in 1945 until the time of its removal to the city park in 1946; that a small young boy in an effort to climb up the back of the stand pulled off a bracing board; that there was no inspection of the grandstand after its removal to the city park.

■ From this testimony the unsafe condition of the grandstand at the time of the accident and for a long time prior thereto might be reasonably inferred by the jury.

A city has the duty to maintain its parks including a grandstand owned and erected thereon by third parties and used in the public interest in a reasonably safe condition for its intended use. See City of Sapulpa v. Young, 147 Okl. 179, 296 P. 418. There inheres in the verdict of the jury a finding of notice, actual or constructive, to the city and that likewise is reasonably supported by the testimony.

Affirmed.

CORN, DAVISON, O'NEAL, and WILLIAMS, JJ., concur.

HALLEY, C. J., JOHNSON, V. C. J., and WELCH, J., dissent.

HALLEY, Chief Justice (dissenting).

In my judgment, the majority opinion in this case overlooks the admitted facts and misapplies the law applicable thereto.

The land on which the baseball diamond was located belonged to the City of Guymon. It was never maintained as a city park. The baseball diamond was not laid out by the City of Guymon. The bleachers were not built by agents of the city nor placed on the field by the city. The public was not invited by the city to use the property as a park. There was no park equipment to attract people to the park. The town baseball team which had no connection with the city government had laid out the baseball diamond and moved the bleachers to the diamond. The city authorities had not given them any authority to use the land or place bleachers thereon.

The majority relies on the case of City of Sapulpa v. Young, 147 Okl. 179, 296 P. 418, 438. In fact, this is the only authority cited in the entire opinion. The facts in that case are so different from those in the case at bar there is no similarity except that cities were defendants in each case. In the Sapulpa case, the city had maintained the park as a municipal park and the public was invited to use the same for recreation and pleasure and for a long time prior to the accident out of which the action arose had been used by individuals, families, schools and civic clubs for such purposes. The city maintained, and not private individuals, a

golf course, a baseball diamond and playground equipment. The party injured was a child of fourteen years and was injured while using a swing. In the case at bar, we have an adult injured by the fall of bleachers in which he could discover defects as readily as the city employees. There was no showing that Guymon had a park department or any person whose business it was to take care of that type of property.

Guymon is clearly not liable in this case for the reason that it was not shown that the bleachers were defective prior to the accident or that the defective condition had existed for a sufficient length of time to put the city on notice of such condition. The plaintiff was not entitled to recover under the rule laid down in City of Sapulpa v. Young, supra, from which I quote:

"The city is not liable for damages occasioned by the dangerous condition of its parks until notice of such dangerous condition is brought home to it, or such condition has existed for such a length of time that it is chargeable with notice of the unsafe condition, the same as it is liable for defective streets and sidewalks."

The majority opinion says, "There inheres in the verdict of the jury a finding of notice, actual or constructive, to the city and that likewise is reasonably supported by the testimony." I do not think the record will bear out the correctness of this statement. There is no evidence of notice to the city of any defect in these bleachers nor was there any evidence that such defective condition had existed for a sufficient length of time to put the city on notice of the defect.

Clearly this stand did not become dangerous until one of the braces was kicked loose. Until that happened, the bleachers were safe to sit upon. The city had no opportunity to make repairs between that happening and the collapsing of the bleachers. Since we have followed the liberal view, which is the minority view in the United States, 63 C.J.S., Municipal Corporations, § 907 a & b, in allowing recovery in cases arising from personal injuries in city parks saying that the maintenance of parks is a proprietary rather than a governmental function, we

should at least require the plaintiffs to show that the city had notice of the defective condition or that it had existed long enough to put the city on notice which was not done in this case.

The majority opinion puts an undue burden on the small municipalities not justified by our previous decisions or sound legal principles.

I dissent.